Mr. Justice Johnson
 

 delivered the opinion of the Court.
 

 This case involves a great many questions both of law and fact, but we will consider it as it is affected by those circumstances, concerning which there is no dispute.
 

 Leeds and Straas befog engaged in commercial enterprizes, Straas employed Hodgson to effect insurance on the Sophia and her cargo. A nóte of Hodg-son, with Patton and Dykes as endorsers, is taken for the premium. Another adventure on the brig Hope, grows out of the first, on the Sophia ; and the same agent, at the request of the same principal, effects insurance upon this also, with the same Company. The Sophia arrives in safety, but though one of the endorsers is unquestionably sufficient, the prémium note remains unpaid. The Hope is lost, and Hodgson professedly suing for the use of Straas and Leeds, has recovered judgment against the underwriters for the amount of the policy. From this amount the premium note connected with that policy was discounted, but that growing out of the insurance on the Sophia, was not pleaded, notwithstanding the identity of the legal plaintiff in that action, with the debtor to the company in the transaction on the Sophia.
 

 The note taken for the insurance on the Sophia, is now set up against the policy on the Hope, in a different form. This bill is filed to compel the parties in interest, Hodgson, Leeds and Straas, to discount it from the judgment against the underwriters;
 

 The equity of this demand is now to be tested.
 

 
 *567
 
 The sight to the discount considered with reference to identity of parties, was clearly a legal one. And had not the Company been injoined in the Chancery , of Virginia,, during the pendency of the suit, upon the policy, they must have lost nil claim, to the interposition of this Court, by .failing to assert their .legal rights in the Court to which they properly belonged. Bpt the Chancery of Virginia might have considered the Company in contempt, had they set up in discount a claim then pending, and then injoined in the Courts of that State. And, therefore, We. may now be justified in • considering the legal .rights of the Company, against the policy on the Hope, as derived through the premium note on the Sophia, under all the advantages that it would have possessed, if pleaded as a set-off to the action at law.
 

 The bill, it is true, does not explicitly rest on -this, as the ground of its .equity, but the. facts are so set out, and may be properly considered as making up the case.
 

 . What was the state of right as it stood at law ? Hodgson, as holder of the policy which, he had effected, was, to/the amount of his commissions, advances, or even liability incurred in’the transaction^ a privileged creditor, and that possession could not be violated until he was indemnified or compensated. If he be considered as the legal plaintiff in the action on the policy, and, in fact, the legal owner of the money recovered for the use of others, the .law would not suffer him to be deprived by transactions between Straas and Leeds, to which he.néver assented, of. any
 
 *568
 
 legal advantage derived from possession, of that money.
 

 Suppose, to come up to the very case before us, the Company had pleaded this note as a set-off to the suit on the policy, and Hodgson, the legal plaintiff, had tendered a replication admitting the plea, in what manner could the Company or himself have been deprived of the benefit of its being thus disposed of ? That Hodgson was entitled to indemnity from Straas at least, against this note, is unquestionable ; and he would, as against Straas, have, under. any circumstances, been entitled to retain a sufficient sum tó cover his liability. Then how could he, by the act of Straas, either by assigning away his interest, or by impeding by an injunction, that act in a third person, which would have secured, him in its consequences, be deprived of the benefit of compelling the admission of this set-off? The case in equity, as it now stands, is precisely that which would have arisen at law, upon the state of things supposed. For, Hodgson, in his answer to this bill, admits this set-off, and solicits the Court to enforce the admission of it by Leeds, who in the right of Straas, is thus endea-vouring to deprive him of his legal right to indemnity. The case in no part contests the reality of this state of facts, btit the defendant, Leeds, in every part of.it, rests his defence upon the ground, that Straas has succeeded in défeating the claims of Hodgson, and deprived the Company of the benefit incident to the assertion of those claims; first, by tying the hands of the Company in a Court of Chancery, in a suit in which he finally failed, and then by a transfer of a
 
 *569
 
 chattel interest, the evidence of which, or the contract itself, was in the hands of Hodgson, and legally subject to his control, until the money due on it was , . . ' reduced into possession.
 

 It is true, that had this set-off been pleaded at law to Hodgson’s suit upon the policy, and the equitable interest of others been set up against such plea, or against Hodgson’s admission of it, the Court of Common Pleas must, according to modern practice, have heard the parties on affidavit, before it determined to admit Hodgson’s replication on its files. But, supposing the case to have been presented on. affidavit, such as it now appears to this Court, that Court would not have taken upon itself to deprive the legal plaintiff of a legal advantage, in favour of an assignee of a chose in action, where the equity, of the case was so strong in the favour of the legal plaintiff.
 

 It is obvious, that the principal difficulties in this case arise from the inverted and peculiar state of the parties. Hodgson, (and with him his endorser,) who is really the party to be relieved, appears in the character of defendant, and the question presents itself^ why should the underwriters be at liberty to quit their hold upon their note for indemnity, and come upon the judgment holder on the policy for satisfaction in the first instance ?
 

 But to this several answers present themselves.
 

 Why, if the underwriters had several remedies, should they, by the act of the opposite party, be deprived of any one of them ? Why, if they might
 
 *570
 
 legally have availed themselves of their remedy by discount, should they how be deprived of it because they were prevented, unconscientiously by their an- .' r , -, A ,. tagomst, from asserting it in its proper place r And why, if they can in this way certainly save theft money, should they be put to the risk and labour of prosecuting á recovery upon their note ?
 

 But the case affords another answer of á more general nature. Notwithstanding Hodgson’s insolvency, his claims upon this policy remain unpaid, if it be only for the purpose of shielding his endorsers; and notwithstanding his appearance here as a co-defendant, it is obvious, that dismissing, this bill must give rise to new suits between, the persons liable to pay this note,. and the assignee of Straas’ in-r terest under the policy. This consideration affords the additional reason, that entertaining this suit terminates litigation, and the reverse would be the consequence of dismissing this bill. If having been deprived by his antagonist of his remedy at law, is a sufficient ground for entertaining the suit of the complainant, it is certainly no objection to it, that relief is at the same time extended to one who, though nominally a co-defendant, is essentially a co-plaintiff, and might have been made such.
 

 Had he been made such, the case would have presented fewer difficulties. If Straas himself could not have demanded of Hodgson this policy, or the money recovered on it, without securing him against the premium note, neither can his assignee. Even the Courts of law have recognised the lien of a bro
 
 *571
 
 ker on a chose in action for a general balance of account, and much more so ought a Court of equity in the application of a principle so peculiarly its own, as that which gives effect to a transfer by assignment of a chose in action iiot in its nature negotiable.
 

 The parties in this case sue only to be restored to their legal advantages ; as that cannot be done specifically, they certainly have a claim on this Court to secure to them all the beneficial consequences that would have resulted from them. And as Straas’ interest in the Hope would háve been amply sufficient to enable Hodgson to pay this premium note, had the money on the policy come into his hands, there is nothing unreasonable in making it, in the hands of the officer of this Court, subject to be disposed of in the same manner.
 

 Let it be distinctly understood, that the Court does not, in this decision, countenance the idea, that a separate debt may be set off to a joint action. The debtor and creditor at law are the same. And upon Hodgson’s reducing the money into possession, the same identity of parties would exist. For Leeds and Straas do not appear in the case at all, in the relation of copartners in trade, but Leeds himself represents them as holding distinpt interests, although in the same subject. Leeds’ defence, rests altogether on Straas’ assignment, not on their blended rights ; nor does he pretend to ignorance of the off-set now contended for, when he took the assignment, but only observes, with a view, it is presumed, to show he had no reason to believe it to be a subsisting debt,
 
 *572
 
 that it was at that time enjoined before the Chancellor of Virginia. This is setting up. a wrong m Straas to support a right in his assignee.
 

 Decree affirmed..