## ELEUTHERE IRENEE DU PONT and VICTOR DU PONT v. PETER BAUDUY and ALEXANDER DECHAPELLE.

Court of Chancery. New Castle County. In Vacation. May 16, 1822.

*Ridgely's Notebook IV, 25.*

[Order by the Chancellor.]

An order was made to the Register of the Court of Chancery to issue a writ of injunction against the said P. Bauduy and A. Dechapelle, the defendants named in said petition to stay all proceedings at law upon the judgments and each of them mentioned in the said petition and in the Schedule *A* thereunto annexed, until the said defendants or one of them, should fully answer the bill of complaint of said E. I. du Pont and V. and until this court should make other order to the contrary; provided that the said E. I. D. and V. du Pont should first give security to his (the Register's) satisfaction, by bond in the usual manner to pay to the said Alexander Dechapelle the real debt, interest and costs mentioned in the said judgments, in case the said writs of injunction shall be dissolved, or in case this court shall decree the real debt, interest and costs mentioned in said judgments to be paid to said Alexander Dechapelle, or such part thereof as this court shall decree to be paid to the said Alexander Dechapelle.

And it was ordered by THE CHANCELLOR that the subpoena be issued forthwith after the injunction is issued, and be put into the sheriff's hands, and that the bill be filed on or before the 20th day of June next. And it was further ordered by THE CHANCELLOR that before said writ of injunction be issued, said petition should be sworn to agreeably to the form prescribed by the rules of this court on bills to stay waste on suits at law, THE CHANCELLOR not deeming it sufficient that the matters contained in said petition are sworn to be just and true to the best of his knowledge.

## [*Note.*]

This writ was ordered because it was sworn, that it was understood between Bauduy and the petitioners that whatever Bauduy should be indebted to E. I. du Pont, individually, or as a partner, should be credited and adjusted in the settlement of the purchase money of the woolen manufactory; and there may be an equitable set-off when there can be none at law; but then it must depend upon the particular circumstances of the case. Nothing was said of Victor du Pont, but in the letter there is a reference to the bond of the two Du Ponts given to Bauduy on account of the woolen manufactory, and it would seem that this bond of theirs might become a matter of discount. The writ was ordered without any prejudication of the matter, but to give the petitioners an opportunity of obtaining the set-off if they are equitably entitled to it, in consequence of any agreement of the parties.

In England, set-off depends on the Statutes, 2 Geo. II, c. 22, s. 13, and 8 Geo. II, c. 24. Our Defalcation Act passed 13 Geo. II (1 Del.Laws 162), by which it is enacted "That if two men, dealing together, be indebted to each other, upon bonds, bills, bargains, and the like, the defendant may, in his plea and answer to the plaintiff's declaration, acknowledge the debt which the plaintiff demands from him, and defalk what the plaintiff is indebted to him the said defendant." The Statute, 2 Geo. II, c. 22 was passed in the year 1729; the 8 Geo. II, in the year 1735; and our Act in the year 1740. In *Downham v. Matthews,* Prec. Ch. 580, on presumption of an agreement that one demand should be set off against another, it was allowed. This was in 1721. *Hawkins v. Freeman,* 8 Vin.Abr. 560 pl. 26, 2 Eq.Cas.Abr. 10 pl. 10, supposed to be in 10 Geo. I, on proof of an intent of the parties that that one debt should be set off against another, it was allowed. And see Amb. 407 that set-off first allowed in equity. 11 Ves.Jr. 24, *Ex parte Stephens,* Lord Eldon says that this court was in possession of the doctrine of set-off, as grounded upon principles of equity, long before the law interfered. And so it appears from the above cases. See also 2 P.Wms. 128, of discount allowed on agreement, *anno* 1723. And see 8 Vin.Abr. 556, discount; and 2 Eq.Cas.Abr. 4, account and discount.

In this case the question will be whether the separate debt of Bauduy can be set off against the joint debt of the Messrs. du Pont. In this case also, both of the Messrs. du Pont are debtors. One is not the surety of the other. 1 Atk. 237, Lord Hardwicke says, I do not know that a court of equity has gone further than

a court of law. Our Act of Assembly says if two men dealing together etc.—this means debts between the same parties. Bull. N.P. 179. At law, debts which can be set off must be such as are due in the same right; as a debt due to a man in right of his wife cannot be set off in an action against him on his own bond. 1 Ves.Sr. 208, Amb. 407. Debts in different rights cannot be set off against each other. And Sir Thomas Clark, Master of the Rolls, says there is no case where a debt in one right has been set off against a debt in another right. The question here, it seems to me, will be whether there is any agreement that these debts shall be set off one against the other. 3 Johns Ch. 351, *Duncan v. Lyons*, that courts of equity follow the same rules as courts of law as to set-off; that the debts must be between the same parties, in their own right, and must be of the same kind or quality, and be clearly ascertained or liquidated. 4 Johns. 11, *Dale v. Cooke.* Joint and separate debts cannot be set off against each other in equity any more than at law. And the debts must be mutual, and due to and from the same persons in the same capacity. 11 Ves.Jr. 24–27, *Ex parte Stephens,* Lord Eldon said when the court does not find a natural equity going beyond the Statute, the construction of the law is the same in equity as at law. So as to mutual debt and credit. *Vide* 3 Mer. 621, 12 Ves.Jr. 345. Hanson and Williams were indebted to Castells and Powell in a joint bond; Hanson as principal, Williams as surety. Hanson was a creditor on his separate account to an amount exceeding the bond. Castell and Powell were bankers and had become bankrupt. Lord Erskine said:

> "In this case I am not obliged to do more than Courts of equity were in the habit of doing, before the Statute of Set-off existed; which Statute was made only to prevent circuity. Suppose, the bankruptcy had not occurred. A plea of set-off could not have been put in to an action by the bankers: but the moment they obtained judgment Hanson would have brought an action; and, if the surety had paid the joint debt, would have re-paid him by the money recovered in that action: if Hanson himself had paid it, he would then have been reimbursed; and, if they had paid in moieties, they would have divided it. So the thing would have been just as if no action had been brought."

Now I do not understand how this proceeding stated by Lord Erskine would have made it a case of equitable set-off; nor because the assignees were subject to the same equity as the bankrupt. He says that a plea of set-off could not have been put in to an action of the bankers; and how then could equity relieve, when it could not be done at law without some equitable circum-

stances? Suppose Hanson had sued for his separate debt and recovered from the bankers, that identical money would not have been designated to satisfy the surety, and yet that seems to be the Chancellor's idea; and because that money would have satisfied the principal and surety, for the money paid on the joint debt, it seems that this separate debt should be set off against the joint debt, but this is a fanciful notion. It appears to me that there being a surety in the case, without some agreement, some transaction by which the debts have a relation to each other, would still leave it a question of law. The mere suretyship would not give it an equitable feature, so as to take the case out of the common doctrine that a joint debt cannot be set off against a separate debt. In the same case, 18 Ves. Jr. 233, Lord Eldon says that Lord Erskine's order was right on this ground, "The joint debt was nothing more than a security for the separate debt, and upon equitable considerations a creditor, who has a joint security for separate debt, cannot resort to that security, without allowing what he has received, on the separate account, for which the other was security." Then again I cannot discover how the joint debt due from Hanson and Williams to the bankrupts Castells and Powell was a security for the debt which Castells and Powell owed to Hanson alone. This was a case of bankruptcy, but the assignees of Castells and Powell had sued Hanson and Williams, and this then was not a case entirely under the Bankrupt Laws. If this joint debt was a security for the debt Castells and Powell owed Hanson, so in every such case the joint debt may be a security for a separate debt, which would at once allow joint and separate debts to be set off against each other, without any equitable circumstances.

This case of Du Pont and Du Pont against Bauduy and Dechapelle, will, I apprehend, depend upon its particular circumstandings, upon the agreement or understanding of the parties as to the set-off. In 4 Johns Ch. 15, *Dale v. Cooke,* Chancellor Kent cites *Addis v. Knight,* 2 Mer. 121, where the Master of the Rolls said a joint debt could not be set off against a separate debt in equity. *Vulliamy v. Noble and others,* 3 Mer. 593. A joint debt cannot be set off against a separate debt at law; but may in equity, under particular circumstances; as where there is a clear series of transactions in which joint credit has been given. The doctrine of set-off and mutual credit under the Statute is the same at law and in equity. 1 Swans. 30, *Ex parte Flint. Vide* 4 Johns Ch. 11, 287. 6 Wheat. 565.[1]

---

[1] At this point, *Ridgely's Notebook IV, 30,* the account of this case is interrupted; it is resumed at *301.*

Court of Chancery.   New Castle.

August 28, 1823.

Bill of injunction.   July 10, 1822, filed; then answer filed, August 22, 1823.   Exceptions filed, August 25, 1823.   (See Notes, above.)

*Rogers* for complainants.   *McLane* for defendants.

*Mr. Rogers* reads the bill.   (See Notes, above.)  Reads the exceptions.

*Mr. McLane* reads the answer.

---

[*Bill of Complaint.*]

Bill states that complainants and P. Bauduy were partners in a woolen manufactory.  That in Spring of 1815 P. Bauduy sold his interest in the same to complainants, and about March 1, 1815 in part payment of the same, gave their joint and several judgment bond for $4,375 with interest from said March 1. May 10, 1815, judgment entered severally on said bond against complainants in Supreme Court as of April Term, 1815.  Stay of execution till May 18, 1822.

That E. I. du Pont sold lands to P. Bauduy for $7,325 and on June 15, 1813 at request of P. Bauduy conveyed said lands by two separate deeds of bargain and sale.  Consideration in one deed $5,000;  in the other, $2,325.  That P. Bauduy paid on account of said consideration money:  November 13, 1812, $1,579.-68;  March 12, 1813, $325;  March 12, 1814, $1,060;  July 4, 1814, $1,633.02;  July 4, 1814, $20.

That on May 18, 1822, P. Bauduy was indebted to E. I. du Pont, for purchase money of said land, $4,729.86 as by Schedule *B* annexed to the bill.  That at execution of said deed E. I. du Pont gave receipt for the consideration money, on receipt of said deeds, whereas but a small part of said consideration money had been paid to said E. I. du Pont.  That before and after said sale of said lands E. I. du Pont, having extensive transactions with said P. Bauduy, some in litigation, said P. Bauduy refused to pay to him balance of said purchase money, wherefore he, E. I. du Pont filed a bill in this Court to August, 1818, to compel P. Bauduy to account for and pay to him balance of said purchase money.  Decree that bill be taken *pro confesso*.

That in suit in this Court by P. Bauduy against E. I. du Pont and others, an account has been taken and P. Bauduy found indebted to the defendants in $457.82, and contingently in $907.-

82. That E. I. du Pont is principally interested in said balance and has sued for same in this Court, but said suit has not yet terminated. That on July 20, 1818, P. Bauduy caused said judgments (entered May 10, 1815) to be indorsed for the use of Alexander Dechapelle. That P. Bauduy being then much involved etc. fraudulently and without consideration, indorsed said judgments to Dechapelle.

That said equitable demands, founded on mutual credit, may be set off against said judgments notwithstanding said assignments to Dechapelle and though said assignments may be founded on good and valuable consideration.

That prior to February, 1815, the said P. Bauduy was a partner with E. I. du Pont and others in manufacturing gun powder on the Brandywine and was also, before that period, a partner with complainants in said woolen manufactory. That P. Bauduy sold his interest in said gun powder manufactory to said E. I. du Pont and others (the other partners) for $60,000 and an annuity of $15,00[0] for four years. And it was agreed, that, on settlement of the account of P. Bauduy with the concern, the balance should be paid by the party [who should] be indebted [to the] other, as appears by an Agreement made in February, 1815. And an Agreement was made by P. Bauduy and complainants in relation to woolen manufactory to take an inventory and value the property, according to the Articles of Agreement, a copy of which is annexed marked *C*, the pencil marks on the same being in the handwriting of P. Bauduy.

That after the agreement to dissolve partnership between P. Bauduy and complainants (in the woolen manufactory) according to *C*, P. Bauduy, knowing that he would be entitled to receive money from it, and none from the powder manufactory, he was anxious to settle the sum due him from the woolen manufactory, but to retard the settlement of the powder manufactory, and by reason of constant solicitation of said P. Bauduy complainants agreed to purchase his interest in the woolen manufactory for $17,500 which sum complainants secured to said P. Bauduy by mortgage of the real estate which belonged to said P. Bauduy and the judgment bonds of complainants.

(*Bill*, p. 8.) Complainants charge that it was well understood between the parties, that what should be due from P. Bauduy on account of the powder manufactory and what might be due from P. Bauduy to E. I. du Pont on any private transaction between them, should, on adjustment, be credited to the debt from complainants to P. Bauduy (meaning by said, bonds of complainants to P. Bauduy). And that V. M. Garesche the son-in-law and agent of P. Bauduy knew of this understanding, as appears

by the letter of said V. M. Garesche to Victor du Pont, dated May 28, 1815.

(p. 9.) That when complainant purchased of P. Bauduy his interest in the woolen manufactory, the same being distinct from all other concerns between them, they amply secured him, and E. I. du Pont did not expect any delay in the adjustment in the amount on the sale of the lands and what might be due from P. Bauduy. On the powder manufactory purchases; but P. Bauduy made difficulties in matters where he was debtor, when he had secured himself in others.

(pp. 9–10.) That by decree, in cause E. I. du Pont vs. P. Bauduy, for recovery of the consideration money for said tracts of land, it is established that P. Bauduy is indebted to E. I. du Pont for balance of said purchase money with interest. And said E. I. du Pont insists that such balance and interest could be discounted from the debt due from him on said judgment even in a court of law. And E. I. du Pont insists that said P. Bauduy is indebted to E. I. du Pont de Nemours and Co. in a sum exceeding $900; that E. I. du Pont by Articles of Association is entitled to receive all money due to said company; that he, E. I. du Pont is principally interested in said money due from P. Bauduy to said concern. That others interested are desirous that the money due from P. Bauduy should be settled with E. I. du Pont as a credit on said judgment against E. I. du Pont. And E. I. du Pont insists that the balance due to E. I. du Pont and others in the cause of P. Bauduy against him and others may in equity be set off against said judgments, and that unless relief be afforded him as claimed by this bill, the money due to him individually and as a partner in said firm will be lost.

(p. 11.) That P. Bauduy now, and for several years past, with his family, has resided out of the United States in Cuba, whither he will be enabled to draw the amount of said judgments unless prevented by this Court, though he is indebted [to] one of complainants in a much larger amount. That P. Bauduy in the Summer of 1819 he, the said P. Bauduy absconded from the jurisdiction of this Court, giving out that he was going temporarily to Charleston on business.

(pp. 11–12.) That when P. Bauduy absconded as aforesaid he was insolvent, that his real estate has been incumbered with liens exceeding $50,000 among which is a large sum secured to said Alexander Dechapelle. That real estate of P. Bauduy has been advertised for sale by sheriff under process to him directed, and will fall short of paying the incumbrances against it. That by reason of the residence out of jurisdiction of this court and in-

solvency of P. Bauduy, E. I. du Pont can have no remedy but by discounting his claims out of said judgments. That interest has been regularly paid on said judgments, and notice has been given to Dechapelle and Bauduy that a set-off would be claimed whenever the bonds for the woolen manufactory should be due, "such discount and set-off having been distinctly agreed to and concluded upon at the time when the said P. Bauduy by the agreements aforesaid withdrew himself from his partnership in the said woolen manufactory and powder manufactory, and without such consent or agreement, as your orator, were both principals in the said debt and judgments entered severally against them, your orators are advised that the claims aforesaid will be discounted in a court of equity."

(pp. 13–14.) That although the said Alexander Dechapelle [2] knew said judgments were liable to said discounts, yet Dechapelle by his agent, before the day of payment had arrived, communicated to plaintiffs that payment would be exacted, as soon as the judgments should be due. But now so it is etc. P. Bauduy and Dechapelle refuse to discount from said judgments the money due to E. I. du Pont as aforesaid the said judgments, pretending the said monies are not due to said E. I. du Pont whereas the same are established in this court. And Dechapelle alleges that the judgments being indorsed to him are not liable to said discount, whereas the indorsements of said judgments by Bauduy to Dechapelle was fraudulent and without consideration, and intended to defraud E. I. du Pont and the other creditors of P. Bauduy.

Prayer that said P. Bauduy and Dechapelle may be compelled to discount the amount of said balance of principle and interest, due to E. I. du Pont for the sale of the aforesaid tracts of land etc. And that said P. Bauduy and A. Dechapelle may be compelled to discount whatever sum may be ascertained to be due from said P. Bauduy in said suit wherein said P. Bauduy is complainant. And that said Bauduy and Dechapelle may be prohibited by a perpetual injunction from all further proceedings upon the said judgments against complainants, and that said judgments may be decreed to be satisfied by reason of the said debts due from said P. Bauduy to said E. I. du Pont. And that said P. Bauduy and A. Dechapelle may come to a fair and just settlement with complainants touching the premises, in this court, and for general relief.

---

[2] Manuscript reads "Deschapelle were knew."

Annexed to the Bill:

*Articles of Agreement between Victor du Pont and E. I. du Pont of one part and Peter Bauduy of the other part, respecting the dissolution of the partnership now existing under the firm of Du Pont, Bauduy and Co. on the Brandywine.*

Art. 1.   By mutual consent the partnership is dissolved from the [——] [3] 1815, on the following basis.   An inventory and evaluation of property shall be made, and if the parties do not agree each of them will appoint an arbitrator, and they if necessary, an umpire who will determine finally. If by the balance made in consequence of said arbitration it appears that the balance due Peter Bauduy now on book and acknowledged to be his interest in the factory is not reduced, said balance will be guaranteed to him by mortgage on the property;  if said balance is reduced the said reduction will be divided in two parts, and one of those parts or 50% (Here the Chancellor does not understand the marks which follow the figures 50;  they perhaps mean per cent.) on the difference will be charged to the account of Peter Bauduy and reduce the same in proportion (provided the said $^{50}\!/_{100}$ reduction does not exceed six thousand dollars, for the [——] [4]).

Art. 2.   The balance due P. Bauduy and so settled will draw annually the legal interest at 6% on the same and be reimbursed in four annual payments, the first payment to be on the first of May 1821, the second on the first of May 1822, the third on the first of May 1823, and the fourth on the first of May 1824, the whole guaranteed by mortgage.   (The interest to be paid annually June 1, and not suffered to accumulate.)

Art. 3.   Peter Bauduy will return or transfer the title he had to the real property, and do agree to furnish his indorsements, if necessary and required, on all the paper of the company now existing in banks or otherwise, provided said indorsement shall not be required at any time for a larger sum than the sum now existing, but on the contrary shall be reduced every year, and will cease May 1, 1820. These indorsements will be secured to him by a joint bond under the common form of indemnification for indorsements (by Victor du Pont and E. I. du Pont).

---

[3] Blank in manuscript.

[4] Blank in manuscript.

Art. 4. The firm will assume a new name within [——] [5] months.

Art. 5. It is agreed also by Peter Bauduy in the name of Bauduy, Garesche and Co. that if the present machines in the possession, the fulling mill and three shearing machines will be ceded by them to V. du Pont and E. I. du Pont at a reduction price on a valuation made by [——],[6] and the said machines will be paid for in three payments every six months after they shall be in operation and doing well. It is also agreed that V. M. Garesche, from and after February 15, will renounce to any future share and profits or emoluments granted to him by the firm of Du Pont, Bauduy and Co. and that his services are to cease as soon as the general balance of the books is made and agreed on. But the said Garesche will, as promised by him, teach Charles du Pont or one of the Messrs. de Thiers what he knows about the grinding of shears (and Charles to learn to Garesche the knowledge of dy[e]ing which he received from Ferdinand).

In witness whereof we have interchangeably set our hands and seals this [——] [7] day of February, 1815.

In presence of (here a word written or two which the Chancellor cannot make out).

(At a real valuation as it was agreed from the books and accounts kept.)

The pencil marks upon the above Agreement, made in the handwriting of Peter Bauduy, were written upon to preserve the same, by the counsel concerned in the cause. August 29, 1823, signed: *James Rogers, L. McLane.*

Note the pencil marks are here in brackets. The above is truly copied except that words are contracted, the names [are] not written exactly [as] in the original, and where the writing could not be made out by the Chancellor. The original was not signed nor sealed nor witnessed.

The joint and several answers.[8]

---

[5] Blank in manuscript.

[6] Blank in manuscript.

[7] Blank in manuscript.

[8] This account breaks off here, *Ridgely's Notebook IV, 306,* and is followed by a blank page; it is resumed at *334.*

Court of Chancery. New Castle.

September 6, 1823.

Bill of injunction. Answer. Exceptions to the answer.

*Rogers* for complainants. *McLane* for defendants.

*McLane* for defendants. Eighth exception, that defendants have not answered whether or not said defendants were both principals in the bonds. No part of bill calls for any other answer than is given. P. Bauduy sold his interest to defendants. They gave bond and mortgage. It is an inference of law whether they or either is principal or surety. There is no interrogatory whether they are principals or sureties.

*Mr. Rogers* for plaintiffs. See p. 12 of bill.

First exception disallowed.

Second exception disallowed.

Third exception disallowed.

Fourth exception disallowed.

Fifth exception not answered (but *quaere* as to the materiality); not allowed.

Sixth exception not answered as to sufficiency of his estate in paying amount of incumbrances.

Seventh exception not answered as to P. Bauduy.

Eighth exception (see above) answered.

Ninth exception answered.

Tenth exception not answered.

Eleventh exception as tenth.

Twelfth exception as seventh not answered.

Thirteenth exception disallowed.[9]

---

Court of Chancery. New Castle.

August 30, 1825.

Bill for injunction. See above. Answer filed.

*Rogers* for complainants. *McLane* for defendants, and *Mr. Bayard* for defendants.

This is a motion to dissolve the injunction.

---

[9] At this point, *Ridgely's Notebook IV, 334,* the account of this case is interrupted; it is resumed at *694.*

*Rogers* reads the bill. *Mr. Rogers* reads a letter of May 28, 1815, written by V. M. Garesche to Victor du Pont. This letter is annexed to the bill and admitted in the answer. *Mr. Rogers* proposes to set off the amount of a decree recovered by Du Pont de Nemours and Co. against Bauduy of about $121; and the decree recovered by E. I. du Pont against Bauduy of about $5,-000.

*Mr. McLane* for Bauduy and Dechapelle. The facts are to be extracted from bill and answer. Answers to be taken as true. Injunction to be dissolved unless from bill and answer some principle be extracted to support it. 2 Madd.Ch. [1815 ed.] 285, 6. If answer denies all circumstances upon which the equity is founded, answer to be allowed. He cites 8 Ves.Jr. 35, 1 Johns.Ch. 211. If answer denies all equity of bill, injunction to stay proceeding at law dissolved. Answer not contradicted by affidavits. 8 Ves.Jr. 35. If answer denies all circumstances upon which equity is founded, injunction dissolved. Party cannot set up any record or decree which is not admitted. The decree of E. I. du Pont against Bauduy would not be evidence in this case because it is a record between different parties; Victor du Pont and Alexander Dechapelle are not parties in that suit. And this suit arose after the assignment of these bonds. This decree was an imposition on the court, obtained without a hearing, not upon oath. Mr. du Pont under his own hand shows he sold the land on which that decree was founded to Bauduy, Garesche and Co. and nothing was due on it. In other decree it is said $121 is due to Du Pont de Nemours and Co.

If subject matter of the suit not within this jurisdiction, this court cannot take jurisdiction to give party a set-off. They can have set-off at law, if in this court. Why does he come here if he has a legal set-off? No agreement is set out in the bill, but the letter of V. M. Garesche. Garesche is no party to this cause. Answer denies that no idea of set-off as to this case is in the letter; that arose, after, and relates to other matters. Or that Garesche was agent of Bauduy or had any authority to disturb the Agreement about sale of woolen manufactory. The bonds were executed May 9, 1815. Agreement between Bauduy and the Du Ponts, by which the contract of woolen manufactory was completed, and bond May 9, 1815, made pursuant to that agreement. There is no agreement. Answer denies the agency of Garesche. That letter referred to accounts of Bauduy, Garesche and Co.

Set-off is from analogy to statute and court of equity will not allow anything to be set off that is not a strict legal set-off. 19

Ves.Jr. 465, *Ex parte Blackden*. In equity it must be a strict set-off at law, or in case of mutual debt and credit. Dig. 331 pl. 6. 5 Cranch 34. 3 Johns Ch. 351, *Duncan v. Lyon*, that courts of equity follow same rules as courts of law as to set-off. The debts must be between same parties, in their own right, and must be of the same kind or quality, and clearly ascertained or liquidated. 3 Johns Ch. 573. Joint demands not to be set off against separate. Debts mutual, they must be due to and from the same persons in same capacity. 4 Johns Ch. 11, *Dale v. Cooke*, Insolvency. 6 Wheat. 565.

---

### Thursday, September 1, 1825.

*Mr. Rogers* for Messrs. du Pont and du Pont. It is not invariable (though it may be the general) rule to dissolve the injunction on the denial by defendant of the equity in the bill. 2 Harr. Ch.Pr. 195. In some particular cases the court will continue the injunction after the defendant has fully answered the equity of the bill. 2 Johns.Ch. [——] [10] Bauduy is out of the jurisdiction of the court. He owes one of plaintiffs two debts. He is insolvent here. This question is not to be decided by statutes, it rests on the equitable principles of Court of Chancery. 2 Burr. 826. At common law now set-off, but his relief was in chancery alone. Rule of law that in all cases under statute joint debts cannot be set off against separate debts.

But this is a case of set-off independent of statutes. At common law, courts will set off debts not within statute. These statutes relate to actions commenced. In court of common law doctrine of set-off is recognized independent of the statutes. 4 Term 123, *Mitchell v. Holding*. 8 Term 69, same principle is acted on by the court. 1 H.Bl. 657, *O'Connor v. [Murphy.]* 2 H.Bl. 587. 3 Wils. 396, a judgment in King's Bench set off against judgment in Common Bench; these were judgments between same parties. 14 Johns. 63. *A* recovered a judgment against *B* and *C; B* recovered a judgment against *A; B* being insolvent, and *C* embarrassed, *A* is entitled to have the judgment recovered [11] by him against *B* and *C* set off against the judgment recovered by *A* against *B* and *C,* and a bill in Chancery sustained for that purpose. The case of *Simpson v. Hart*. 1 Johns.Ch. 91. ([NOTE.]) This case is a strong one that Chancery will not relieve where another court had jurisdiction, and the case was

---

[10] Blank in manuscript.

[11] Manuscript reads "recovered against by him against B and C."

brought before that court, which refused relief.)   2 Johns. 105, *Cole v. Grant,* where there are joint and several suits against the same defendants and costs allowed some of them, but damages against one, the costs allowed in all may be set off.   3 Cai. 190, a judgment in one court may be set off against a judgment in another.   8 Johns. 357, *Porter v. Lane,* costs allowed to defendant may be set off against damages recovered by plaintiff, upon the principles of an equitable right of set-off.   Mont. Set-Off 6, 7.   5 Ves.Jr. 108, *James v. Kynnier.*   Equitable set-off upon mutual credit, though no mutual debts.   Dig. 104 pl. 42, upon which a set-off could be sustained at law.

The judgments have been entered separately against Victor du Pont and E. I. du Pont by Bauduy, then E. I. du Pont is a separate debtor, and he claims to set off the decrees he has recovered against Bauduy.   But as this was the joint debt of V. du Pont and E. I. du Pont and he, Bauduy, has no right to take the money, which he is a debtor to E. I. du Pont, we claim to set off this debt which Bauduy owes to E. I. du Pont against the debt of V. du Pont and E. I. du Pont due to Bauduy.   12 Ves.Jr. 345, *Ex parte Hanson,* 18 Ves.Jr. 233.   (See Notes, above, for May 16, 1822) 1 Esp. 47, a survivor partner sues a debtor in his own name, the debtor may set off a debt which he has against the surviving partner.   The debt survived, and then became a debt due to the survivor and at law the origin of the debt could not affect the case.   6 Term 582, same point ruled.   This is not the case of joint debtors, but of joint and several debtors.   Sets-off against joint debtors by a separate debtor not allowed, *contra* where debts are joint and several.   2 Term 33, a joint and separate bond became the debt of both, and may be set off as a separate debt; see the case.   5 Term 132.   2 Bay. 475.   3 Yeates 267.   Mont. Set-Off, 23, a debt on a joint and several bond may be set off.

He refers to cases cited by Mr. McLane, and cites 6 Wheat. 565.   3 Johns.Ch. 351, 573.   Nothing in these cases, he says, to oppose complainants' prayer for set-off.   4 Johns.Ch. 11.   These bonds, I admit, were assigned in 1816, but it was a secret assignment.   See Schedule *H* where full effect was given to assignment in 1818, in thirty days after notice was given to assignee of the set-off against these bonds; he admits it in answer.   Assignee took bonds but a few days before he had notice etc.

*Mr. McLane* for Bauduy and Dechapelle.   The only ground upon which this injunction was asked and granted was on an agreement, that has failed; and now the attempt is to overset the established law of the land, and the settled practice of the

court. The equity of the bill denied; the agreement denied; the debts said to be due to Du Pont by decrees denied; the bill denied; injunction must be denied. If a party has no other jurisdiction than set-off, the court will not entertain jurisdiction. Du Ponts set here that this is a separate and distinct interest, and that Victor du Pont has nothing to do with it. If contract originally separate and joint security taken, and party cannot because of the joint security get a discount at law; he may come here and investigate the whole transaction and get the discount. 14 Johns. 63 cited, and 1 Johns.Ch. 91. Mayor's Court refused discount and Kent agreed. 4 Johns. cited by Mr. McLane. 5 Ves.Jr. 108 was a case of bankruptcy. 3 Johns. 573. This is said to be a joint and several debt, and is therefore several, judgment being entered severally and it is only to [be] found in any case, in 2 Runn.Eject. 33, only one was liable for this debt in term. Case in Bay. depends upon their Act of Assembly. Saund. 153 note 1, covenant joint and several, covenant several etc. 2 Poth.Obl. 57, 58. The transaction, being originally joint, securities joint.

This debt arose on a purchase of two partners of the third his interest; this was a partnership transaction and a partnership debt. Agreement of Bauduy to sell and these partners to buy, as soon as contract completed; it was a partnership debt, and joint. He, Bauduy, agreed to indorse for them as partners, and not separately. Bauduy took for partnership debt, a joint and separate security, but still it is a joint debt. Object of this bill is to treat this as a joint debt, if separate [E.] I. du Pont would have discount at law. Court is asked to prevent him from suing Victor. Act of these parties in stating it to be joint debt makes it a joint debt. Wats. Part. pp. 274, 275, 276, in margin. All debts provable against joint estate for which partnership was liable. Though separate security, yet joint debt may sue joint effect. This separate security is security for joint debt, partnership debt. The partnership property was mortgaged and pledged for debt. 3 Chit.Com.L. 255. All debts provable against joint estate for which partnership is liable. This partnership debt, not individual debt; the security places this then in same situation as if it had not been taken. Partners are individually and jointly bound for partnership debt. This debt had been assigned to Dechapelle, and notice was given of assignment before E. I. du Pont sued Bauduy. If Bauduy had been insolvent and assigned debt, it would not have been liable. If E. I. du Pont [12] succeeds

---

[12] Manuscript reads "I. E. du Pont."

against this set-off he has a claim against partnership. If E. I. du Pont[13] pays, it is a partnership debt; still it is a partnership matter.

The assignee acquired this debt for a valuable consideration. In England chose in action not assignable, and therefore assignee liable to all equity to which it was liable in hand of originator. 2 Fon.Eq. Bond here assignable, and passes the legal interest and assignee may sue in his own name. 1 Dall. 23. Assignee takes the debt liable to all equity. 4 Dall. 307; case of note, p. 371. Assignee takes it discharged of all the equity as between the original parties, of which he has no notice. In case of assignment, equity confined to time of assignment; then Bauduy not insolvent, and not equitable ground now to interfere. Assignee liable for no other equity than at date of assignment. Under the decisions I may be liable to all equity arising out of the transaction on which bond is founded. Add. 323, the equity or discount should arise out of the original transaction.

The assignee trusted to the partnership security, and gave notice of nothing else. The bond, on the face of it purports to be a partnership transaction and never could suppose private debt could be set up against the bond. Interest was payable annually, and was paid annually as the bill states. Discount should have been set up against interest, this led assignee to suppose it a partnership transaction. Assignee liable to no equitable [claim] growing out of a distinct and different transaction. The assignee not bound to consider partnership Du Pont de Nemours and Co. If trustee sells trust land and has no notice of trust, he is not liable to *cestui que trust*. Assignee here has a strict legal advantage, and court will leave him in possession of legal advantage unless the complainants have superior equity. Creditor may buy better security. Dechapelle here has bought the mortgage. Answer, suppose this a struggle between two creditors who shall get the partnership fund. 2 Burr. 979, assignment of bond, assignment of debt, and carried the mortgage with it. Suppose discount made, no more than share of Irene[e] du Pont can be discounted. (Why not all, if it is a separate debt? But if partnership debt, then it is a joint debt.) Debt if set off, must it be against one or against all? Must it be against the bond assigned to Dechapelle, or against bond assigned to others? This is a partnership debt and individual cannot be set off against it.[14]

---

[13] Manuscript reads "I. E. du Pont."

[14] This account breaks off here, *Ridgely's Notebook IV, 699,* and is followed by three and a half blank pages; it is resumed at *V, 113.*

Court of Chancery. New Castle.

July 17, 1826.

This is the injunction cause heretofore argued. See, above.

Bill and answer; at issue.

*Mr. McLane* for defendants.

May 9, 1815, bond, Victor du Pont and Eleuthere Irenee du Pont to Peter Bauduy. Penalty, $8,750. Conditioned to pay to P. Bauduy $4,375 on or before May 1, 1822, and interest as specially stated in the bond, and further condition warrant of attorney to confess judgment.

September 16, 1816,[15] assignment of said bond by P. Bauduy to Alexander Dechapelle for value received in the presence of D. Dothier, V. Dothier. Bond and assignment admitted as proved by the witnesses.

May 9, 1815, bond and warrant of attorney, $8,750. Victor du Pont and Eleuthere Irenee du Pont to Peter Bauduy, conditioned to $4,375 before May 1, 1823, and interest as specially mentioned.

September 16, 1826, assignment of said bond by P. Bauduy to Alexander Dechapelle. Bond and assignment admitted as proved by witnesses.

September 15, 1812. In French, Articles of Association between Peter Bauduy, E. I. du Pont, I. P. Garesche, V. M. Garesche, Ferdinand Bauduy, Peter Dauday *pour* Bernard de Sessenay. Admitted as proved.

February 15, 1815, Memorandum of Agreement between Peter Bauduy of the first part and Eleuthere Irenee du Pont, Peter Samuel du Pont by his attorney the said E. I. du Pont, Madame Bureaue de Pusy by her attorney Augustin Bousquet, and Jacques Biderman by his attorneys the said Augustin Bousquet, and Jacques Antoine Biderman, of the second part.

Continued on the former rules to next term.[16]

---

[15] Manuscript reads "1826."

[16] At this point, *Ridgely's Notebook, V, 113,* the account of this case is interrupted; it is resumed at *313.*

Court of Chancery.   New Castle.

July 12, 1827.

Bill in Chancery.   *Vide* Notes, above.

*Rogers* for complainants.

*McLane* for defendants.

*Mr. Rogers.*

This cause has heretofore been before this Court, first on exceptions to the answer, and after a sufficient answer was filed, on a motion to dissolve the injunction.  That motion was argued by the counsel on each side, and the injunction was dissolved.

Now, this July 12, 1827, the case came on for a final decree; but the bill, answer, depositions and exhibits were not read, neither was any argument had, the counsel taking upon themselves to prepare the case here as if it were regularly heard, and all the proofs and exhibits made and read, that a final decree may be made, so that the case may go fully into the High Court of Errors and Appeals, where *Mr. Rogers,* counsel for Messrs. du Pont, says he proposes to carry it.