$$\frac{7}{18} \quad \frac{77}{488}$$
$$\frac{7}{26} \quad \frac{77}{468}$$

## WINDHAM COUNTY BANK *v.* H. L. KENDALL & CO.

A copartner has nò right to endorse a promissory note with the name of the firm, for the purpose of raising money for his individual uses; or, to cover up such unauthorized use of the name of the firm, to direct that no notice of the dishonor of the note should be given to the firm, or that notice should be given in such mode as to insure that it shall come to his own hands only; but if he does conduct thus unfairly towards his copartners under circumstances which do not apprise the discounters of the note of the wrong practiced upon the firm, and they have no notice of it, the firm will be bound both by the endorsement and the waiver of notice, or by the mode of notice directed.

It is for the jury, and not the court, to construe the meaning of members of a firm in a conversation introduced to prove the power of one of them to use the name of the firm in his private transactions; and to determine, whether the power spoken of as allowed to the copartner was in the business of the firm, or in his private business.

Cumulative evidence, discovered since the verdict, will not afford ground for a new trial, unless it be so controlling upon the point to which it relates that it will probably change the verdict.

ASSUMPSIT to recover from the defendants, as endorsers, the amount of two promissory notes of $1250 each, dated June 22d,

1859, made by George Kendall, payable to the order of H. L. Kendall & Co. in three months after date, and by H. L. Kendall & Co. endorsed to the plaintiffs.

The case was tried, under the general issue, at the September term for the county of Providence, by the Chief Justice, sitting with a jury; and on the trial it appeared, that George Kendall, the maker of the notes, was a member of the firm of H. L. Kendall & Co., and procured the plaintiffs to discount the notes in question, without informing them of the uses to which the proceeds of the discounts were to be put.

The defendants proved, that the name of the firm was written upon the notes by George Kendall, and offered evidence tending to prove, that the proceeds of the note obtained by the discounts were applied by George Kendall to his individual uses. It further appeared, that when the notes matured and were dishonored, notice of the fact was sent to the defendants, addressed to the City of New York, to the care of George Kendall, instead of to the City of Providence, where the firm did business, and where the members of the firm resided. The defendants claimed that the firm of H. L. Kendall & Co. was not liable upon promissory notes, given by one member of the firm, and endorsed by him with the name of the firm for his individual benefit; and that, if the endorsement was, for any cause, binding upon them, the firm was not liable to pay the notes, by reason of the insufficient notice of their dishonor.

The plaintiffs offered evidence, in reply, tending to prove that they did not know, and had no reason to apprehend, that the notes were endorsed by George Kendall in the name of the firm, for his own benefit and in fraud of its rights; that said George was the only member of the firm known to the plaintiffs in various pecuniary arrangements which, from the year 1857, had been negotiated by him with them, for the benefit of the firm; that in December, 1858, the said George sent to them, from New York, for discount, two promissory notes for $1250 each, made by one Johnson, payable four months after date and endorsed by H. L. Kendall & Co., which they discounted; and when these notes matured, the notes of George Kendall, endorsed by H. L. Kendall & Co., were substituted in place of them, and when these

last notes matured, their place was supplied by the notes in suit. They further proved, that in addition to an arrangement for a weekly loan of $1000 to H. L. Kendall & Co., effected by George Kendall with the plaintiffs, they commenced, in February, 1858, to discount the individual notes of George Kendall, and did actually loan him $8250 upon the security of the endorsement of the firm's name, written by George himself, which endorsement, as well as the whole transaction, it was agreed by all the defendants, was known to and authorized by them. No notice of any limit of the amount in which George was authorized thus to use the name of the firm was proved to have been given to the plaintiffs, and evidence was given, on their part, that no such notice was given to them. Jarvis F. Burrows, a witness produced on the part of the plaintiffs, testified, that being in Providence to enquire for the plaintiffs, if the firm of H. L. Kendall & Co. was good, he was told by Hiram Kendall, in the presence of Henry L. Kendall, who, with George Kendall, constituted the firm of H. L. Kendall & Co., "we let George do pretty much as he has a mind to. You need not be alarmed. If anything happens to him, you shall be taken care of, and your bank."

With regard to the insufficiency of the notice to the defendants of the dishonor of the notes, the plaintiffs proved, by the cashier of the bank, who was also the notary, that George Kendall had given a general direction to have all notices upon the firm's paper sent to him at New York, where he spent a portion of his time upon his own business and the business of the firm, and that the notices in question were sent in pursuance of that direction. On the part of the defendants, it was testified by George Kendall, that his direction was not as stated by the cashier, but that he had ordered the cashier, not to send any notices at all upon any paper endorsed by the firm,—he preferring to waive notice in all cases,—and that in view of this direction, he had no right to expect that any notice of the dishonor of the notes in suit would be sent to the firm.

The judge who presided at the trial instructed the jury, amongst other things, that it was for them to determine, whether the testimony of Jarvis F. Burrows was to be believed, or not; and whether, if believed, the Kendalls, in the conversation which he

related, intended to or did apprise him, that George had a general authority from the firm to use their name for his own benefit, or only in the business of the loan to the firm by the plaintiffs; and also, that if the jury found that the firm of H. L. Kendall & Co. had been notified as endorsers of the notes sued, as directed by George Kendall, one of the members of the firm, or that said George Kendall had waived for the firm the giving of such notice, the plaintiffs having no reason to believe that said George Kendall was not acting fairly towards his copartners in giving such directions as to notice, then the plaintiffs might recover on said notes, of said firm, upon giving or omitting notice, as directed by said George Kendall.

The jury having returned a verdict for the plaintiffs, for the sum of $2885.67, the amount of said promissory notes, with interest, the defendants now moved for a new trial upon the ground of error in law in said instructions; and also upon the ground that the verdict was against the weight of the evidence, as reported by the judge trying the cause, in his minutes taken at the trial. The defendants also moved for a new trial upon the ground of the discovery of new and further evidence, the particular statement of which evidence in the opinion of the court, renders any statement of it here unnecessary.

*T. A. Jenckes, for the defendants :*—

I. Upon the evidence, the jury were not rightly instructed as to the sufficiency of the notice. A partner has no right to give such direction as testified to on the part of the plaintiffs, or to make such waiver as is stated in the testimony of George Kendall, upon a note which he has endorsed in the name of the firm for his own benefit. Both the cashier and George Kendall agree that the date of the direction or waiver, whichsoever it might have been, was before the notes in suit, or those on which they were founded, had been made. Neither the notes in suit, nor those which preceded them, were in the contemplation of either party. Neither such a direction, nor such a waiver, could have been "fairly" made. The copartners sought to be charged could have no notice, except at the pleasure of the partner using the firm name. If such an arrangement could possibly be "fair," the burden of proving it should be on the party who agreed to it, and not on the partners who may be made to suffer by it.

II. The new evidence in this case shows conclusively that the plaintiffs had notice that the Johnson notes, as well as the notes in suit, were discounted for the benefit of George Kendall, and not for the benefit of the firm. This testimony is entirely inconsistent with that given upon the stand.

III. The testimony of Jarvis F. Burrows did not tend to prove that the conversation with Henry L. and Hiram Kendall, in 1858, supposing his account of it to be true, apprised him or was intended to apprise him, that George Kendall had a general authority from the firm to use their name for his own benefit, and the jury should have been charged to that effect. At the time when the conversation took place, George had not used the name of the firm for his own benefit. There was no fact in evidence which tended to show that it could have been in the contemplation of the defendants, that George should make any such use of the firm name. The whole conversation should have been excluded as irrelevant.

IV. The rule of law in this country is, that the firm are not bound unless the use of the firm name by a copartner is in the business of the firm, or unless he had authority for the use from his copartners. *Rogers* v. *Batchelor*, 12 Peters, 221; Edwards on Bills and Notes, 104; *Williams* v. *Walbridge*, 3 Wend. 415. The authority to endorse does not include the power to sign the firm name as surety to a joint and several note. *Early* v. *Read*, 6 Hill, 12; *Bank of Rochester* v. *Bowen*, 7 Wend. 158; *Wilson et al.* v. *Williams et al.* 14 Wend. 146.

*Thurston & Ripley, for the plaintiffs* :—

I. The notice of non-payment sent by the notary to George Kendall, at New York, for H. L. Kendall & Co., was sufficient to charge the defendants as endorsers, although the residence of the several partners and principal place of business of the firm of H. L. Kendall & Co. was in the City of Providence; provided, George Kendall, one of the copartners, and the party with whom alone the plaintiffs dealt, directed the notice to be sent in that way. This proposition is a necessary corollary from the following well-settled legal principles: 1. In a commercial partnership, each acting partner is the general agent of the firm, and has an implied authority to act for it in all matters within the scope of

its business, as well as power to bind it by contracts relating to subjects incidental to its management. *Winship et al.* v. *Bank of United States*, 5 Peters, 530; *Smith* v. *Lusher*, 5 Cowen, 689; *Boardman* v. *Gore*, 15 Mass. 331. 2. This implied agency in a commercial partnership, for raising money, includes the power to make or endorse promissory notes and accept bills of exchange in the name of the firm. *Le Roy et als.* v. *Johnson*, 2 Peters. 187; *Whittaker* v. *Brown*, 16 Wend. 505; 1 Am. Lead. Cases, 442–3, and cases cited. 3. Notice of non-payment is a condition implied by the law to the contract of endorsement. The power to make the contract necessarily carries with it the ability to alter or waive any of the conditions which form an incidental part of the contract. *Eastern Bank* v. *Brown*, 16 Maine, 356; see, also, *Bank of United States* v. *Corcoran*, 2 Peters, 121; *Farmers and Mechanics Bank* v. *Massey*, 4 Humph. 86; 1 Am. Lead. Cases, notes 401, 404, (4th ed.) 4. Where a note is endorsed in a partnership name, notice to one partner is notice to the firm. *Dabney* v. *Stidger*, 4 Smedes & Marshall, 749; 1 Am. Lead Cases, p. 406.

II. The second, third and fourth grounds for a new trial are severally answered in the preceding.

III. It is objected, that the court instructed the jury that an authority on the part of George Kendall to endorse the name of the firm, upon his individual paper, might be inferred from the conversation sworn to by Mr. Burrows, as having occurred in the spring of 1858, between him and the other members of the firm, before the notes upon which the claim in suit are founded were offered for discount. The language in which this ground of error is couched is a too free translation of the idea given by the court to the jury. Mr. Burrows testified, that after the Windham County Bank had made arrangements to loan George Kendall, for his private use, the sum of $8500, upon the notes endorsed by the firm of H. L. Kendall & Co., he came to Providence, and had an interview with Henry L. Kendall, in the presence of Hiram Kendall; at which interview, the condition of H. L. Kendall & Co. was referred to, as well as the circumstance of the firm's endorsing for George. Upon this last subject, the statement was, in substance, made by one of the firm in the presence

of the other,—" We let George do pretty much as he likes. Whatever you or your bank does for him is all right." It also appeared, from the statement of all the defendants, that George was permitted, at the time, to use the name of the firm to the extent of at least $8500; and the testimony of Mr. John W. Smith showed that he, in fact, was using the firm's name, for his own benefit, upon another note of $2500, while it was agreed, on all hands, that whatever restriction there was between the parties themselves, as to the extent to which George should use the credit of the firm, no notice of any limit to this power was ever given to the plaintiffs. Upon this evidence, the court properly instructed the jury, that the fact of the authorized use of the name of the firm as security for the $8500, and the fact that the extent of their responsibility was not limited by any notice to the plaintiffs, together with the facts sworn to by Burrows, (appropriate reference upon this point being made to the counter testimony of the Kendalls,) were competent evidence to be weighed by the jury, in deciding whether George Kendall had authority to use the name of the firm for his own benefit. In support of the instruction given, see *Jones* v. *Booth,* 10 Vermont, 268; *Ferguson* v. *Shepherd,* 1 Sneed, 256; *Hamilton* v. *Summers,* 12 B. Munroe, 11; *Foster* v. *Andrews,* 2 Penrose and Watts, 160.

IV. The verdict was in entire accordance with the weight of the evidence, upon each of the following propositions:— 1. That the plaintiffs did not know, and had no reason to apprehend, that the proceeds of the notes discounted by them would be used by George Kendall, for his private benefit. 2. That George Kendall either directed notice of non-payment of notes in which the firm was interested, to be sent to him at New York, or he waived notice in behalf of the firm, altogether; and the jury found, upon the instructions given to them, that the plaintiffs acted fairly, and in good faith toward the firm. 3. That George Kendall had authority to use the name of the firm upon his individual paper, or that, by the acts and omissions of the firm to notify the bank of any limit to that authority, the firm are now estopped to deny that they are not liable as endorsers upon the notes in suit.

V. Inasmuch as a motion for a new trial is addressed to the

sound discretion of the court, the rule is, that if upon the whole case it appears that substantial justice has been done, the verdict will not be disturbed, although in some particulars the instructions to the jury, in matters of law, are open to criticism. *Harris* v. *Doe*, 4 Blackf. 369; *Graham* v. *Bradley*, 5 Humph. 476; *Freeman* v. *Rankin*, 8 Shep. 446; *Gibson* v. *Stevens*, 7 N. H. 352; *Allen* v. *Blunt*, 2 Wood. & Minot, 121.

BRAYTON, J. The first ground assigned and urged in the argument for a new trial is, that the jury were not properly instructed as to the sufficiency of the notice.

The direction given to the jury assumes, that George Kendall, being a member of the firm of H. L. Kendall & Co., had authority, as a member of that firm, to waive notice of non-payment by the maker of the notes, or to direct any particular mode of notice of dishonor; and that such waiver, or direction, was binding upon the firm so long as he acted fairly towards his copartners; and though he acted unfairly or fraudulently towards them, they were in like manner bound, unless the holder knew that George Kendal was acting unfairly, or had reason to believe that he was so acting towards his copartners; that is, so long as the holder was innocent of any such purpose.

To this direction, no valid objection has been suggested. It may be admitted, that a partner has no right, as against his copartners, to waive notice upon a note endorsed by him, in the name of the firm, for his own benefit. He has no right to defraud them, or to do any act whereby they may be defrauded. But the endorsement and negotiation of promissory notes and bills is within the scope of the partnership business; and as to everything within the scope of that business, every partner, by virtue of the partnership, is clothed with the power to act for the firm,— to use its name,—and in that name to do every act which the firm collectively might do, whether it be to make or endorse notes or bills; and because the firm might waive notice of dishonor upon a bill or note endorsed by them, any one of the partners may do the same thing, in the name of the firm; and so may he, for the same reason, direct the mode in which notice of dishonor may be given. It is not the less binding upon the other members of the firm, that the waiver, or direction as to the mode of notice,

be not made during the running of the particular note. *Union Bank* v. *Hyde*, 6 Wheat. 570, assumes, though it does not directly decide, that it may be made as to all notes of which the same party might thereafter become the *bona fide* holder. It may be, (and often is so,) that by means of this power, vested in the several partners, a partner is enabled to appropriate to himself the funds of the firm, and to prevent any notice of dishonor coming to the other members. This, however, is a result of the power conferred upon such partner by the injured members, and should fall upon them, rather than upon an innocent holder. The only question in such cases is, had the holder of the note notice of the fraudulent or wrongful act of the partner, so as to become a participant in it? This question has been submitted to the jury, and they have passed upon it, and found that he had no notice.

Jarvis F. Burrows, a witness sworn on the trial, testified, that in a conversation with the firm, there being present Hiram and Henry L. Kendall, at Providence, Hiram Kendall said to the witness,—"We let George do pretty much as he has a mind to. You need not be alarmed. If anything happens to him, you shall be taken care of, and your bank;" that the witness, at this time, was in Providence to enquire if the firm was good. It is claimed that this testimony had no tendency to show any authority conferred by the firm upon George Kendall to use the name of the firm for his own benefit, and that the jury should have been so directed, and the evidence excluded from their consideration. The tendency of this evidence may be weak. Its weight, however, was to be determined by the jury, and not by the court. It certainly tended to show that these partners had given their copartner a pretty extensive license to act for the firm, and that from the exercise of that license, they did not intend that the plaintiff should suffer, whatever might happen to that partner; and we think it was evidence proper to be weighed by the jury upon this question of authority; and there is no just exception to the charge that it was left to their consideration.

Neither do we think that the evidence, said to be newly discovered, furnishes any sufficient ground for a new trial. The evidence, so far as it is new, comes principally from Silas M. Waite, the cashier of the bank, and who was a witness upon the trial,

produced by the plaintiffs and cross-examined by the defendants. The only additional facts derived from him, as contained in his deposition taken since the trial, relates to certain entries on the books of the bank, in relation to the discount of the notes now in suit. He testified on the trial, that he did not know, and had no reason to apprehend, that the endorsement of the name was for the private benefit of George Kendall, or that it was not for the use of the firm. But it appears from his deposition, now produced, that upon the books of the bank are certain entries relating to the notes now in suit, viz.: in the book of discounts, the entries are—

" George Kendall, George Kendall, H. L. Kendall & Co., June 22, 1859, 3 months, . . . . $1250

George Kendall, George Kendall, H. L. Kendall & Co., June 22, 1859, 3 months, . . . . $1250 "

And on the journal of cash credits, under date of June 28, 1859, was this entry—

" George Kendall, . . . $1211 25

1211 25—$2422 50 "

There were similar entries under date of December 3d, 1858, and March 26th, 1859, in the discount book, and in the journal of cash credits.

Upon the trial, the point was made, that the plaintiffs knew, when they discounted these notes, that the proceeds were for the private use of George Kendall, and the witness now says, that, notwithstanding these entries, he did not know that the proceeds of the notes were for such use, or were not for the use of the firm; and the entries are explained by the witness thus :—that the first name is that of the person presenting the note ; the second, that of the maker ; the third, that of the endorser ; and that the name in the cash journal is that of the person who received the money ; but none of the entries show for what use the money was paid by the bank ; that the money was not paid upon the check of George Kendall or of the firm, and that no account was kept with him of these proceeds.

Whether these proceeds were known to the bank to have been for George Kendall, was one of the questions submitted to the jury, and upon which they have passed. The evidence now pro-

posed to be offered upon a new trial is merely cumulative upon that point; and as such, furnishes no ground for a new trial, even though it had been derived from a witness not before examined, and who might be supposed to know all that is now disclosed. Neither does it fall within the exception to the rule as to cumulative evidence, that it must be of so controlling a character that it would probably change the verdict. Indeed, it seems to us to add very little weight to the evidence adduced on the trial, upon this point. The evidence of the other witness is not stronger. Upon the admission of the testimony of both, the evidence would be still conflicting upon the very matter in issue in the former trial; and the matter in issue would not be essentially more plain or certain than before.

A new trial denied, with costs.