## NEW HAMPSHIRE SAV. BANK et al. v. RICHEY et al.

### (Circuit Court of Appeals, Eighth Circuit. March 17, 1903.)

### No. 1,792.

1. CORPORATIONS — POWER TO DISPOSE OF PROPERTY—RIGHTS OF GENERAL CREDITORS.

A corporation, while solvent and a going concern, holds its property like an individual, free from any lien or trust in behalf of its general creditors, and may dispose of the same as it deems best, subject to the provisions of its charter and those other restraints upon the conveyance of property which the law imposes alike on corporations and individuals.

2. SAME—PAYMENT OF DIVIDENDS.

Dividends paid by a corporation to its stockholders are not subject to any lien or claim on behalf of its general creditors, in the absence of proof of insolvency at the time the payments were made, or of a fraudulent purpose.

3. EQUITY—MULTIFARIOUSNESS OF BILL.

A bill is multifarious which joins a cause of action against a corporation for the foreclosure of a mortgage and one against stockholders to recover dividends paid to them out of the income of the mortgaged property, upon which the mortgage was not a lien, and which could only be recovered on the ground that its distribution as dividends was wrongful and fraudulent; and its receipt by the stockholders constituted them constructive trustees for the benefit of corporate creditors.

4. CORPORATIONS—SUITS AGAINST STOCKHOLDERS—SIMPLE CONTRACT CREDITORS.

General creditors of a corporation can only proceed against its stockholders in a federal court of equity after they have exhausted their remedy against the corporation by reducing their claims to judgment.

5. SAME—NEBRASKA STATUTE.

Under the statute of Nebraska, as construed by the Supreme Court of the state, a creditor of a corporation can only maintain a suit against the stockholders after he has reduced his claim to judgment against the corporation and exhausted the corporate assets.

Appeal from the Circuit Court of the United States for the District of Nebraska.

William Baird (John C. Wharton, on the brief), for appellants.

Byron Clark (C. A. Rawls, on the brief), for appellee Richey.

A. J. Beeson, Matthew Gering, and Jesse L. Root, for appellee city of Plattsmouth.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. In this case it appears that Justus G. Richey, one of the appellees, was joined as a defendant in a bill of complaint against the Plattsmouth Gas & Electric Light Company and the city of Plattsmouth, which was filed by the New Hampshire Savings Bank and the New Hampshire Banking Company, with a view of foreclosing a mortgage on a gas and electric light plant located in the city of Plattsmouth, Neb. Richey demurred to the bill of complaint so far as relief was sought against himself. His demurrer was sustained, and a decree was entered directing a dismissal of the bill

¶ 4. Stockholders' liability to creditors in equity, see notes to Rickerson Roller-Mill Co. v. Farrell Foundry & Machine Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.

See Corporations, vol. 12, Cent. Dig. § 1017.

as to him, whereupon the complainants above named, the New Hampshire companies, prosecuted an appeal, assigning as error that the lower court erred in sustaining the demurrer. As the present appeal raises the single question whether the bill contains sufficient allegations to warrant the court in granting the complainants any relief as against Richey, a general statement of the facts disclosed by the bill is all that is deemed necessary.

The mortgage under which the complainants below derive all their rights, and which they seek to have foreclosed, was executed by the Plattsmouth Gas & Electric Light Company, a corporation of Nebraska, on May 8, 1890, to secure bonds to the amount of $30,000, bearing interest at the rate of 6 per cent. per annum, payable semiannually. These bonds were sold to the appellants (the New Hampshire companies) who now own the entire issue. A default occurred in the payment of the interest on these bonds on June 1, 1901, which led to the institution of the present suit to foreclose the mortgage and obtain other relief against the mortgagor company and the city of Plattsmouth, the details of which need not be stated at the present time.

It seems that subsequent to the execution of the aforesaid mortgage, and on October 23, 1896, the Plattsmouth Gas & Electric Light Company leased its entire plant for the manufacture of gas and the production of electricity to the city of Plattsmouth, where the plant was located; doing so in pursuance of the provisions of a city ordinance. The property was so leased for a period of 4 years and 15 days, the term to begin November 1, 1896, and to end on November 15, 1900, at an annual rental of $2,800, which was payable to the lessor company in monthly installments of $233.33 each. In addition to the sum aforesaid, the city agreed to pay the interest on the outstanding bonds of the lessor company, amounting to $1,800 per annum, until November 15, 1900, and also to pay all taxes which might thereafter be assessed against the property so leased to the city. The lease contained a further provision whereby the city was entitled to hold and operate the demised property from November 15, 1900, until June 1, 1910, if it desired to do so, on condition that it paid the interest on the outstanding bonds of the lessor company, amounting to $1,800 per annum, during that period. It was further agreed that the city might terminate the lease on 60 days' notice at any time after November 15, 1900, or buy the property at any time after that date for the sum of $1, by assuming and agreeing to pay the outstanding mortgage indebtedness of $30,000; and that it should have the option to buy the property on the terms last stated, or to continue said lease on the terms heretofore mentioned from November 15, 1900, to June 1, 1910.

The bill of complaint contained other allegations to the following effect: That the lease in question was intended by the lessor company as an out and out sale of all of its property, assets, rights, and franchises to the city; that the sum of $2,800 agreed to be paid yearly to the lessor company was not intended to be paid or received as rent; that the city, on the delivery of the lease, took possession of the demised property and all of the materials and supplies then on

hand, and thereafter continued to operate and use the same as its own; that the sum of $11,333.33 had in fact been paid by the city to the lessor company in monthly installments of $233.33 each, in accordance with the provisions of the lease; that the city had failed to pay certain taxes, amounting to about $300, which were assessed against the demised property for the years 1897 and 1898; that by reason of the city's failure to keep the demised property in a good state of repair, and by reason of its failure to replenish tools, machinery, and materials as they were worn out or consumed, the demised property had become insufficient security for the bonded indebtedness, and that the mortgagor company had become insolvent, having no property whatever except such as was leased to the city and was in its possession.

The bill contained other allegations of the following character: that Justus G. Richey, C. D. Jones, and S. B. Hovey were officers and directors of the Plattsmouth Gas & Electric Light Company, and the sole owners of its capital stock; that Richey owned one-half of the stock of said company when the mortgage which the complainants seek to have foreclosed was executed; that he received from the Plattsmouth Gas & Electric Light Company one-half of the sum of $11,333.33, which was paid by the city to that company in pursuance of the provisions of the aforesaid lease; that the laws of the state of Nebraska made it the duty of the Plattsmouth Gas & Electric Light Company to give notice annually in some newspaper published in the county of Cass, in the state of Nebraska, of the amount of all of its existing debts, which notice should have been signed by the president of the company and a majority of its directors; that this notice was not published pursuant to law, and that by reason of its nonpublication the stockholders of the company, under the laws of the state, became individually liable for the indebtedness due to the complainants in proportion to the amount of stock by them respectively held; and that the defendant Richey was likewise liable for one-half of the sum of $11,333.33, which he had received from the aforesaid company. In view of the premises the complainants prayed for a decree of foreclosure, and for certain other relief against the city of Plattsmouth, Neb., and, in addition thereto, they demanded a personal judgment against Richey to the full extent of his liability in both of the respects heretofore explained.

The complainants rely for a recovery against the defendant Richey mainly upon the allegation contained in their bill that he received from the Plattsmouth Gas & Electric Light Company one-half of the sum of $11,333.33, which was paid to that company by the city as rent for the demised property during the term beginning November 1, 1896, and ending November 15, 1900. In support of this contention it is insisted that the rents received by the lessor company constituted a trust fund, which could only be applied lawfully to the payment of corporate debts; and that, inasmuch as the fund was distributed among stockholders in the form of a dividend, it may be followed into their hands, and recovered from them by the mortgage bondholders. The complainants do not assert that the lien of their mortgage extended to and embraced the rents which they seek to recover from

the stockholders, nor would such a claim be tenable if it was made, since the mortgage under which they claim contained an express provision "that until default should be made in payment of principal or interest of said bonds, and until default should continue for a period of sixty days, said Gas & Electric Light Company should be suffered and permitted to possess, manage, operate and enjoy [the mortgaged property], * * * and take and use the income, rents, and profits thereof in the same manner and with the same effect as if said mortgage had not been made." All of the rents in question were received by the mortgagor company before there had been any default in the payment of interest on the mortgage indebtedness. It is obvious, therefore, that the lien of the mortgage did not extend to these rents, and that the clause in the mortgage to which reference has been made estops the complainants from claiming the rents on the ground that they have a specific lien thereon by virtue of the provisions of that instrument. They are compelled, therefore, to rely, for a recovery of the rents, on the sole ground that the mortgagor company held all of its property and assets in trust for the benefit of its creditors; that they have an equitable title thereto; and that the mortgagor company could make no distribution thereof among its stockholders, no matter what degree of good faith it may have exercised, until all of its debts had been paid.

We are unable to concur in that view of the law. It is now well settled that no such relation as that of trustee and cestui que trust exists between a corporation and its general creditors. So long as a corporation is solvent, and remains in control of its property and assets, it may deal therewith and dispose of the same like an individual, subject only to such limitations upon its powers as may have been imposed by its charter. The general creditors of a corporation are not, like the beneficiaries in a trust, the equitable owners of the corporate property, nor have they any greater interest therein than the creditors of natural persons have in the property of their debtors. Creditors of both kinds are entitled to insist that their debtors shall not make a voluntary or otherwise fraudulent conveyance of their property; but beyond this, in the absence of an express lien created by contract, they have no interest, legal or equitable, in their debtor's property, or right to control that free disposition of the same which is incident to ownership. It is true that when a corporation becomes insolvent such an event places its property from that time forward in such a condition of quasi trust that it must be applied first to the payment of its corporate debts before there can be any distribution among stockholders; but, as was remarked by the Supreme Court in Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 383, 14 Sup. Ct. 127, 130, 37 L. Ed. 1113, the trust which arises in case of insolvency "is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditors or stockholders." Some general expressions of the following purport are to be found in the books, which have been called to our attention, namely, that the "assets of a corporation are a trust fund for the payment of its debts upon which creditors have an equitable lien both as against the

stockholders and all transferees except those purchasing in good faith and for value." Cole v. Millerton Iron Co., 133 N. Y. 164, 168, 30 N. E. 847, 848, 28 Am. St. Rep. 615. But since the subject in hand has been more carefully examined, the later decisions are to the effect already stated that the assets of a corporation are in no proper sense a trust fund for the benefit of creditors; that a corporation, while solvent and a going concern, holds its property like an individual, free from the touch of its general creditors, and may dispose of the same as it deems best, subject to the provisions of its charter and those other restraints upon the conveyance of property which the law imposes alike upon corporations and individuals. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; McDonald, Rec'r, v. Williams, 174 U. S. 397, 19 Sup. Ct. 743, 43 L. Ed. 1022; Wabash, St. L. & Pac. Ry. Co. v. Ham, 114 U. S. 587, 594, 5 Sup. Ct. 1081, 29 L. Ed. 235; Graham v. Railroad Company, 102 U. S. 148, 26 L. Ed. 106.

Now, aside from all other considerations, there is no specific allegation contained in complainants' bill that when the rents in question were received by the mortgagor company, and paid over to its stockholders, it was at that time insolvent. The allegation on that point is that when the bill was filed, to wit, in October, 1901, the mortgagor company had then become insolvent because during the period of its tenancy the city of Plattsmouth had failed to supply new tools and machinery in place of such tools and machinery, forming a part of the mortgaged plant, as had been worn out by use. The bill does not show that the mortgagor company was insolvent when the lease was executed and the rents were distributed, but, for aught that appears, it had as much property at that time as it ever had, and fully as much as it possessed when the complainants' mortgage was executed and the bonds in suit were purchased. In view of the fact that the bill fails to disclose a state of insolvency when the rents were distributed in the form of a dividend among stockholders, and in view of the fact that it likewise fails to disclose any want of good faith or a fraudulent purpose on the part of the gas and electric light company in making such distribution, we conclude that it does not appear that when the rents were paid over to the stockholders they had become impressed with a trust in favor of these complainants, or that they passed into the hands of the stockholders cumbered with any lien in their favor. This view of the case is not sustained by any appropriate allegations of fact contained in the bill, and the claim to a decree on that ground must accordingly be overruled.

It must be further borne in mind that this action, so far as the stockholders are concerned, is a suit to enforce a constructive trust, and this cause of action has been joined with one against the mortgagor company and the city of Plattsmouth to obtain the foreclosure of a mortgage. The very gist of the complaint, so far as the stockholders are concerned, is that the payment of these rents to them was a wrongful and fraudulent act on the part of the company, and that the receipt of the same by the stockholders constitutes them trustees of the sums so received for the benefit of corporate creditors. The causes of action which have thus been joined in the same bill

and in a single count, the one against the company and the city to foreclose a mortgage, and the one against the stockholders to establish and enforce a constructive trust, are so essentially different, the one arising out of contract and the other sounding in tort, that they ought not to have been joined in the same complaint. The two causes of action, besides being essentially different, do not present any common question to be litigated; nor will the evidence which is necessary to sustain one cause of action have any relevancy to the other. It is true that courts of equity exercise a large discretion in determining when a bill is multifarious, and that they will usually be influenced, to a considerable extent, in deciding such questions, by considerations of convenience. But, in view of the fact that the two causes of action are essentially different, and require different proof, and present no common question for litigation, we are of the opinion that within the authorities the bill is subject to the charge of multifariousness, and that the demurrer thereto might well have been sustained on that ground. Security Savings & Loan Ass'n v. Buchanan, 14 C. C. A. 97, 66 Fed. 799; Ziegler v. Lake Street El. R. Co., 22 C. C. A. 465, 76 Fed. 662; Kelley v. Boettcher, 29 C. C. A. 14, 85 Fed. 55; Leslie v. Leslie (C. C.) 84 Fed. 70. Moreover, as these complainants, by virtue of their mortgage, acquired no express lien on the rents which they seek to recover from the stockholders, and as they have no equitable title thereto in virtue of the trust theory heretofore outlined, and can only recover the rents, if at all, on the ground that the distribution thereof among shareholders was, under the circumstances, a fraudulent act on the part of the corporation, such as renders the stockholders accountable to general creditors for what they have respectively received, it follows, we think, that under the doctrine enunciated in Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, such general creditors, including the complainants, can only proceed in equity against the stockholders after they have exhausted their remedy at law; that is to say, after they have reduced their demand to a judgment either in a court of law or by decree in a court of equity. It was held in that case that simple contract creditors of a corporation, whose claims have not been reduced to judgment, and who have no express lien on its property, have no standing in a federal court of equity to obtain the seizure of their debtor's property and its application to the payment of their debts, and that this rule is not affected by the fact that a statute of the state in which the property is situated and in which the suit is brought authorizes such a proceeding in the courts of the state. When the bill in this case was filed, the complainants had not reduced their demand to a judgment. For all of the reasons aforesaid, we conclude that the lower court was right in holding that no decree could be rendered against the defendant Richey on account of the rents which he had received from the mortgagor company.

In this court counsel for the appellants do not seem to rely with much confidence on their demand for a judgment against Richey based on the ground that the gas and electric light company failed to publish a notice annually of all existing debts, as it was directed to

do by section 136, c. 16, Comp. St. Neb., for the year 1889, which appears to have been the statute on the subject that was in force when the mortgage indebtedness was contracted. They concede, apparently, that certain decisions of the Supreme Court of the state of Nebraska in cases arising under this statute render their right to recover against Richey, because the notice in question was not published, exceedingly doubtful; and little was said on this subject in the course of the oral argument, and little is said in the briefs. The statute that was in force when the mortgage indebtedness was contracted declared, in substance, that, if the notice in question was not given, "all the stockholders of the corporation shall be jointly and severally liable for all debts of the corporation then existing and for all that shall be contracted before such notice is given." This act, as it seems, was repealed on April 6, 1891, by another act, which required the same kind of a publication to be made, but declared that, if it was not made, then "all the stockholders of the corporation shall be jointly and severally liable for all the debts of the corporation then existing and for all that shall be contracted before such notice is given, to the extent of the unpaid subscription of any stockholder to the capital stock of such corporation and in addition thereto the amount of capital stock owned by such individuals." Laws 1891, p. 198, c. 13. This latter act was declared to be applicable to "any case now pending or hereafter brought in any court in this state." In a case decided by the Supreme Court of Nebraska on June 6, 1894— Globe Publishing Co. et al. v. State Bank of Nebraska, 41 Neb. 175, 59 N. W. 683, 27 L. R. A. 854—it appears to have been held that the creditors of a corporation have no right of action against the stockholders thereof, by virtue of the aforesaid statutes, until they have reduced their claims to a judgment against the corporation, nor until an execution has been issued thereon, and returned wholly unsatisfied. This conclusion appears to have been reached upon a consideration of section 4, art. 11b, of the Constitution of Nebraska, which provides that "in all cases of claims against corporations * * * the exact amount justly due shall be first ascertained and after the corporate property shall have been exhausted the original subscribers thereof shall be individually liable to the extent of their unpaid subscription and the liability for the unpaid subscription shall follow the stock." The court said that the word "ascertained," as used in the Constitution, meant "judicially ascertained," and that to "judicially ascertain" the amount due from a corporation to a creditor means to have the finding and judgment or decree of a court as to such amount. The court accordingly held that, before a stockholder could be proceeded against under the aforesaid statutes, the creditor must reduce his demand to a judgment, and exhaust the corporate property. In a later case, decided by the same court on April 21, 1898—Van Pelt v. Gardner, 54 Neb. 701, 75 N. W. 874—the doctrine aforesaid was reaffirmed, and it was further held that the Constitution of the state (section 4, article 11b, aforesaid) not only determines what the liability of a stockholder in a corporation for the corporate debts thereof shall be, but limits his liability, and that it is not within the power of the Legislature to extend it. While

this latter decision does not expressly decide that the statutes aforesaid are unconstitutional in that they impose on stockholders a larger liability for corporate debts than the Constitution of the state permits, yet it may be fairly inferred therefrom that such is the fact, and such the effect of the local decisions.

It is unnecessary, we think, to consider the second ground upon which a judgment is demanded against the defendant Richey at greater length. It seems clear that under the local decisions, which, in a matter of this sort, are binding upon this court, the liability which the complainants seek to impose on the defendant Richey because the requisite notice of all existing liabilities was not published cannot be enforced in this proceeding, because the complainants have not as yet reduced their demands to judgment and exhausted the corporate assets. Upon the whole we conclude that the judgment below was for the right party, and that it should be affirmed. It is so ordered.