BROWN v. PEGRAM et al.

(Circuit Court, E. D. Pennsylvania. November 30, 1906.)

No. 19.

1. JUDGMENT—EQUITABLE RELIEF—PLEADING—CERTAINTY.

A bill by a judgment debtor against the judgment creditor and other defendants, which alleges that the creditor will hold a certain part of the amount collected on the judgment in trust for his codefendants or one of them, and that complainant has a set-off against all and each of such codefendants, is not insufficient for uncertainty because it does not allege which one is the owner of the beneficial interest in the judgment, but that complainant has no knowledge as to such fact, and prays discovery in respect thereto.

2. EQUITY—PLEADING—MULTIFARIOUSNESS.

A bill by a judgment debtor to restrain the enforcement of a part of the judgment, on the ground that the judgment creditor holds the same in trust for his codefendants, each of whom is indebted to complainant, is not multifarious because different items of set-off are alleged, since they constitute no part of the cause of action, which is the right to enjoin the collection of the judgment to the extent that it is not beneficially owned by the judgment plaintiff.

3. JUDGMENTS—SUIT IN EQUITY TO ENJOIN ENFORCEMENT—GROUNDS.

A judgment debtor is not debarred from the right to maintain a suit in equity to enjoin its collection on an allegation of set-offs against the beneficial owners, which would render its enforcement inequitable by the fact that such set-offs are legal demands or unliquidated, especially where the defendants against whom they exist are nonresidents of the United States, or are insolvent.

4. DISCOVERY—IN EQUITY—JURISDICTION OF FEDERAL COURT.

Where the subject-matter of a suit in a federal court is clearly within the jurisdiction of a court of equity, the complainant is entitled to discovery in respect to any matters relevant and necessary to his case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, § 10.]

In Equity. On demurrer to bill.
See 143 Fed. 701.

Burr, Brown & Lloyd, for complainant.
Dickson, McCouch & Glasgow, for Pegram.

HOLLAND, District Judge. Thomas Pegram, one of the defendants in this bill in equity, brought suit in this court against Arthur K. Brown, receiver of the American Alkali Company (hereinafter called the "Alkali Company"), the plaintiff in this bill, and recovered judgment against him for $52,000, with interest, on two notes issued by the alkali company before it became insolvent, and which were held by him as collateral security for an indebtedness which he had against the Commercial Development Corporation, Limited (hereinafter called the "Development Company"), the payee of the notes. Prior to the time that judgment was obtained for this amount, Thomas Pegram was paid about $32,000 on account of his claim against the development company, leaving a balance due him of about $20,000, with interest, for which he holds the judgment, and claims to be entitled to collect the entire amount of said judgment, to wit, $52,000, with interest, out of which the balance due him is to be paid, and the surplus, amounting

to about $30,000, he, the said Pegram, claims to hold for the benefit of the development company or A. R. Harvey or Ruth L. Harvey, against whom Brown, the receiver of the alkali company, plaintiff in this case, has claims, which the bill avers he is entitled to set off against any interest either may have in the surplus of this judgment over and above what is necessary to pay the amount yet due Pegram. The set-off which the receiver claims to have against the development company and the Harveys, for whom Pegram as trustee will hold the balance of the judgment when collected, according to the allegations in the bill, arises out of the following state of facts: The alkali company was a corporation organized under the laws of the state of New Jersey in 1899, with an authorized capital of $30,000,000, of which $24,000,000 was to be full-paid common stock, consisting of 480,000 shares, par value $50, and $6,000,000 preferred stock, consisting of 120,000 shares, par value $50. One W. W. Gibbs became the president of the company, and in the spring of 1899 he, representing the alkali company, entered into an agreement with the development company, which was represented throughout the transaction by A. R. Harvey, for the purchase of certain patent rights owned by the development company, for which Gibbs agreed, on the part of the alkali company, to pay the development company, in addition to the common stock it was to receive, $1,-000,000 in cash, which sum was to be raised by subscription to the preferred stock of the alkali company. The $6,000,000 of preferred stock of the alkali company was expected to be subscribed for and issued, upon which the subscribers would be required to pay 20 per cent. of the par value on the 120,000 shares, which would net the company the sum of $1,200,000. Of this sum it was intended to pay $1,000,000 to the development company for its patents, and $200,000 was to be used by the company for the construction of a plant to develop the commercial value of this patent process. Each subscriber to the preferred stock under the subscription agreement was only liable in case the whole of the 120,000 shares of preferred stock was subscribed for, and at one stage of the transaction it became clear that the public would not subscribe for all of this preferred stock; and, in order that it should all be taken, in accordance with the subscription agreement, A. R. Harvey subscribed for a large number of shares, either for himself or the development company or Ruth L. Harvey. Of these shares (the exact number being unknown to the plaintiff) 7,000 were subscribed for by one James Allen, who was a clerk in the office of the brokers who were representing the development company or A. R. Harvey or Ruth L. Harvey in the transaction. James Allen had no interest in these shares of stock only as a holder for the real owner. Subsequently, the cash payment due the development company for these patents was reduced by the amount which should have been paid on this pretended subscription by Allen. The alkali company, after consummating this agreement, became insolvent, and on September 9, 1902, receivers were appointed, and the plaintiff, surviving receiver, in obedience to an order of the Circuit Court of the United States for the District of New Jersey, on September 19, 1905, levied an assessment of $2.50 per share upon the holders of the preferred stock, which assessment upon the 7,000 shares held by Allen for the

development company or the Harveys amounts to $17,500, which is now payable; and it is claimed in the bill that this is a proper set-off against the interest which the development company or either of the Harveys may have in the judgment obtained against the receiver by Pegram. It is further alleged in the bill that these notes, amounting to $50,000, upon which Pegram brought his suit against the alkali company, were executed by the alkali company in favor of the development company as part payment for the $1,000,000 cash which the development company was to receive for these patents, and that the development company assigned these notes as collateral security to Pegram for a loan of $50,000, and that after the assignment the development company became insolvent, and, as a result, was unable to pay the entire amount of the loan at maturity, but it did pay, through its receiver, on account of this loan, about $30,000. This payment was made prior to the time that suit was brought in this district by Pegram against the alkali company. Prior to the payment, however, A. R. Harvey and Ruth L. Harvey had personally guarantied the payment of the entire judgment, and Pegram now claims a right to the whole amount of the judgment of $52,000, claiming to hold the balance over and above an amount sufficient to pay what is due him for the benefit of the development company or A. R. Harvey or Ruth L. Harvey, whichever may be entitled thereto. According to the allegations in the bill, it is further claimed that the receiver of the alkali company has an additional set-off of $529,500 against any interest which the development company or the Harveys may have in the Pegram judgment, which arises out of the fact that A. R. Harvey, for the development company, entered into a secret and fraudulent agreement with Gibbs, who was then president of the alkali company, by which Gibbs was to receive $529,500 out of the $1,000,000 cash which was agreed should be paid for the patents of the development company; so that, instead of the development company being paid $1,000,000 in cash for the patents which it sold to the alkali company, Harvey, by a secret and fraudulent agreement, permitted Gibbs to retain this large amount, which fraudulent payment to Gibbs by Harvey for the development company was without the knowledge of the alkali company, and a fraud upon it, for which the development company and A. R. Harvey are liable to the alkali company, and is now claimed to be a set-off against any interest which the development company or Harvey may have in the Pegram judgment. It is further averred that Ruth L. Harvey, the wife of A. R. Harvey, has the burden of proving that any interest she may have in the judgment was not derived through her husband.

The bill prays: (1) The defendants, Pegram, A. R. Harvey, Ruth L. Harvey, and the development company be compelled to answer every allegation of the bill. (2) That the court fix the amount due Pegram on the judgment. (3) That the plaintiff be permitted to set off the amount of the assessment upon the 7,000 shares of stock and the amount fraudulently paid by A. R. Harvey and the development company to Gibbs against any interest the development company or the Harveys may have in the Pegram judgment.

The defendants filed a demurrer to this bill, alleging that the plain-

tiff is not entitled to the several reliefs which he prays, for reasons which can be considered under four different heads.

First. The facts are not averred with sufficient certainty, in that the essential facts in paragraph 6 of the plaintiff's bill are not averred by the plaintiff of his own knowledge or upon information and belief, and he expressly admits that he is ignorant of who may be the beneficial owner of such interest as Pegram may not have in such judgment. It is true that the facts stated in paragraph 6 are not averred upon the knowledge, information, or belief of the plaintiff, and that they are essential to maintain the suit. The plaintiff states as a fact that Pegram, at the trial of the suit against the alkali company, in which he obtained the judgment of $52,000, testified to certain facts, to wit: that he had loaned the development company $50,000; that he had taken, among other collateral the notes of the alkali company; that he had received from the development company 80 or 90 pounds on account of his claim; that A. R. Harvey and Ruth L. Harvey had personally guaranteed the loan of $50,000 to the development company; and that he had received another payment on collateral amounting to 6,000 pounds. Thus we have the allegation in the bill that Pegram testified to these facts in the suit upon which he recovered this judgment, and, following this, the plaintiff, in paragraph 7, makes an unqualified averment of the facts testified to by Pegram in paragraph 6, and further avers that Pegram holds the balance of the said claim and judgment as trustee for the said development company, A. R. Harvey, or Ruth L. Harvey, all defendants in the bill, depending upon considerations which are not known to the plaintiff, and which he has no means of ascertaining, but which he is bringing this bill in order to have the court ascertain and pass upon. Taking paragraphs 6 and 7 together, there is no uncertainty about the allegation of these essential facts. The averments are clear and positive as to the amount Pegram loaned to the development company; what collateral notes of the alkali company were taken as collateral security therefor; the amounts paid on account, and by whom; and the amount still due Pegram on his judgment, and that he holds the balance of this judgment as trustee of the other defendants; but the plaintiff is unable to say which of these defendants has the beneficial interest in the judgment. We do not think it essential that the plaintiff should aver positively which of the defendants is the owner of the beneficial interest in the judgment, where he has alleged facts showing the intimate connection of all, and the circumstances are such that he cannot know with certainty; but in paragraph 8 the plaintiff does allege that he has a just set-off against all of these defendants mentioned in paragraph 7 who may have an interest in the judgment. Which one it may turn out to be the plaintiff is unable to say, but he prays that all the defendants may answer these allegations fully, and whichever one shall finally be determined to be the beneficial owner of the surplus in the judgment, he has a set-off against that one. Less certainty is required concerning facts upon which a discovery is sought from the defendants. Foster's Federal Practice, § 67; Towle v. Pierce, 12 Metc. (Mass.) 329, 46 Am. Dec. 679.

The demurrer admits the truth of the allegations in paragraph 7, which is an averment of the facts which it is alleged in paragraph 6

was testified to by Pegram in the suit to obtain the judgment. Here we have the positive allegation that the plaintiff has a valid set-off against three parties, and that one of these parties is entitled to the surplus in the Pegram judgment, but that the evidence as to the one so entitled is in the possession of the defendants. This is made to appear in the bill, with proper technical averments, showing a necessity for a discovery.

We think the plaintiff has stated these essential facts with the certainty the circumstances would permit. These allegations set out the case intended to be made with certainty, and this is sufficient. Story's Equity Pleading, § 242; Foster's Federal Practice, § 69.

Second. It is urged that the bill is multifarious, which consists in the joinder of two or more distinct and unconnected grounds for equitable relief, each of which may be the foundation for a separate bill, and that in this bill the first cause of action set out is one at law for an assessment on stock, and the second a claim sounding in tort for the payment of secret commissions to Gibbs by the development company and A. R. Harvey. The defendants mistake the items of set-off for the cause of action.

There is only one cause of action set forth. This single cause of action is the alleged fact that Pegram intends to collect this judgment from the plaintiff, when it would be unjust and inequitable that he should do so, because of the fact that he insists upon a right to collect the most of it for other parties, who owe the plaintiff upon various claims, which should be liquidated before they are entitled to any portion of their claim in the judgment. The cases cited in the plaintiff's brief in support of this objection to the bill, to wit, Lewarne v. Mexican International Improvement Company (C. C.) 38 Fed. 629; Holton v. Wallace (C. C.) 66 Fed. 409; First National Bank of Sioux City v. Peavey (C. C.) 75 Fed. 154; New Hampshire Saving Bank v. Richley, 121 Fed. 956, 58 C. C. A. 294—are cases where the plaintiff in the bill joins distinct causes of action or distinct grounds of relief. As an example, in the case first cited, the bill brought by the stockholders against the corporation and directors for an accounting sets forth in three distinct and separate causes of action (1) an illegal issue of preferred stock; (2) a breach of trust on the part of the directors in fraudulently issuing full-paid stock for a nominal consideration; and (3) the illegal purchase by them of a certain lottery grant. Of this bill it can well be said that it was multifarious, and it was dismissed; but in the case at bar there is only one ground for the relief sought, and that is that the plaintiff shall be protected against the collection of this Pegram judgment by parties who now owe the plaintiff company. The multiplicity of claims which the plaintiff alleges he is entitled to set off against these parties who are endeavoring to collect the judgment does not make the bill multifarious. Nor can the bill be said to be multifarious because of a misjoinder of defendants. They are all interested in opposing the relief prayed. The rule in this regard was thus stated by Sir John Leach:

"In order to determine whether a suit is multifarious, or, in other words, contains distinct matters, the inquiry is not, as this defendant supposes, whether each defendant is connected with every branch of the cause, but whether

the plaintiff's bill seeks relief in respect of matters which are in their nature separate and distinct. If the object of the suit be single, but it happens that different persons have separate interests in distinct questions which arise out of that single object, it necessarily follows that such different persons must be brought before the court, in order that the suit may conclude the whole object." Foster's Federal Practice, § 73.

The single purpose of this bill is to restrain Pegram from collecting this judgment partly for parties against whom the plaintiff has several items of set-off, and the fact, if it should so turn out, that each defendant is not interested in each item of set-off, does not entitle him to prevail in an objection to the bill that it is multifarious for that reason; nor do the prayers of a bill make it multifarious when the object of the bill is single. Mills v. Hurd (C. C.) 32 Fed. 127.

Third. The next objection is that the bill does not state a case which entitles the plaintiff to equitable relief, because he is, in effect, seeking, first, to recover an assessment on stock against an alleged subscriber, and, second, to recover judgment in an action of tort, and to set off one or both of these two different choses in action against the judgment. It is claimed the plaintiff is prohibited by the judiciary act of 1789 (Rev. St. § 723 [U. S. Comp. St. 1901, p. 583]), from pursuing his remedy in a court of equity, and that the defendants are entitled to a trial by jury. There might be some force in this objection if the primary object of this bill was to collect an assessment upon stock, and to recover damages upon an action of tort against the defendants. In the enforcement of such obligations debtors are entitled in the United States courts to a trial by jury in an action at law where the amount to be recovered is $20 or more. The purpose is to restrain Pegram, one of the defendants, from collecting a judgment in which the other defendants have an interest, and against which interest the plaintiff claims to have a set-off, which arises out of a liability on the part of these defendants for an assessment on stock and damages in an action of tort. The plaintiff has the right to invoke the power of a court of equity to relieve him against the collection of a judgment which in justice and good conscience should not be collected.

Justice Jackson, in Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 615, 14 Sup. Ct. 715, 38 L. Ed. 565, says:

"It is well established that equity will entertain jurisdiction and afford relief against the collection of a judgment where in justice and good conscience it ought not to be enforced, as where there is a meritorious equitable defense thereto, which could not have been set up at law, or which the party was, without fault or negligence, prevented from interposing. Illustrations of these general principles are found in the cases of Leeds v. Marine Ins. Co., 6 Wheat. 565, 5 L. Ed. 332; Scammon v. Kimball, 92 U. S. 362, 23 L. Ed. 483; Crim v. Handley, 94 U. S. 652, 24 L. Ed. 216; Embry v. Palmer, 107 U. S. 3, 2 Sup. Ct. 25, 27 L. Ed. 346; Knox County v. Harshman, 133 U. S. 152, 10 Sup. Ct. 257, 33 L. Ed. 586; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870."

The plaintiff being entitled to equitable relief against an unjust enforcement of this judgment, the fact that the ascertainment of amount due on an assessment of stock and the liquidation of an unliquidated claim for damages in an action of tort, as items of set-off are involved, cannot defeat the plaintiff's right to maintain his bill, because the defendants would have a right of trial by jury if the sole object of the

action was either the collection of the assessment on the stock or a suit for the action of damages. Nor is it a valid objection that the plaintiff cannot set off an unliquidated claim in a proceeding of this kind. Farmers' Bank v. Penn Bank, 2 L. R. A. 273 (note); Fidelity Trust Co. v. Merchants' Bank, 9 L. R. A. 108 (note). This point has been passed upon by the Supreme Court of the United States in Rolling Mill Co. v. Ore & Steel Co., supra, wherein it is said, on page 615 of 152 U. S., on page 715 of 14 Sup. Ct., 38 L. Ed. 565:

"Cross-demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced by way of set-off whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice."

And again, it is held in the same case that the decided weight of authority is to the effect that the insolvency and nonresidence of the party against whom the set-off is claimed are grounds for equitable interference. In the case at bar the parties are all nonresidents of the United States, and one of the parties (the development company) is insolvent.

Fourth. The only other matter we need notice is the objection that a bill for discovery cannot be maintained in a federal court where the only ground for equitable relief appears to be discovery of evidence for the enforcement of purely legal demands. We have shown that the plaintiff's bill makes a case of which a court of equity clearly has jurisdiction. Where the subject-matter of the suit is clearly within the jurisdiction of a court in equity for redress, and the relief prayed is such as the plaintiff is entitled to receive in this court, he is permitted to have all the discovery which is relevant and necessary in aid of the relief his bill entitles him to receive. Story's Equity Pleadings, § 289; Foster's Federal Practice, p. 233.

The demurrer is overruled.