WATSON et al. v. NATIONAL LIFE & TRUST CO. et al.*

(Circuit Court of Appeals, Eighth Circuit. May 7, 1908.)

No. 2,691.

1. EQUITY—PLEADING—MULTIFARIOUSNESS OF BILL.

The joining of several complainants in a bill in equity, the purpose of which is to secure an accounting of a trust fund in which all of the complainants claim an interest, with others, although their interests are several, does not render such bill multifarious.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 368.]

2. SAME—PARTIES—ONE OR MORE SUING IN BEHALF OF ALL.

Where a large number of persons are separately, but similarly, interested in a trust fund, a bill in equity for an accounting with respect to such fund and for direction as to its administration may be maintained by a part of such body in behalf of all.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 257.]

3. SAME—GROUNDS OF JURISDICTION—ENFORCEMENT OF TRUST.

An insurance corporation issued a large number of policies, by which in consideration of the payment of premiums during a fixed term it contracted to pay a certain sum to each policy holder at the end of such term, together with an equitable portion of a profit fund to be made up from gains and profits from lapses and other sources. While such policies

---

were outstanding the company transferred its assets to another company, disenabling itself from performing its contracts, and went out of business. Its successor, after issuing similar policies, transferred its assets to a third, and the third to a fourth, company. *Held*, that holders of policies in the transferring companies were entitled to join in a bill in equity for some form of relief with respect to the assets transferred as a trust fund, and where the bill contained allegations tending to negative any novation to join all of the companies as defendants.

4. TRUSTS—SUIT TO ENFORCE—CONDITIONS PRECEDENT.

Such bill being for the enforcement of a trust, and not a creditors' bill, it was not essential that the claims of complainants should first be reduced to judgment against the companies issuing the policies.

5. SAME—PARTIES.

Where one part of the relief prayed for related to funds deposited by some of the companies with a State Auditor, in such aspect of the bill the Auditor was an indispensable party; but his absence would not prevent the granting of relief to which complainants might be entitled with respect to the fund in the hands of defendants, nor render the bill subject to demurrer.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

J. M. Parsons (William H. Atwood, on the brief), for appellants.
L. A. Stebbins (Dudley & Coffin, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. This was a bill in equity, brought by complainants Watson and Olson, for themselves and others similarly situated, against the National Life & Trust Company, an Iowa corporation, hereinafter called "Trust Company," the Security Life & Savings Insurance Company, an Iowa corporation, hereinafter called "Security Company," the National Life Insurance Company of the United States of America, incorporated by an act of Congress, hereinafter called "Federal Company," and the National Life Insurance Company of the United States of America, an Illinois corporation, hereinafter called the "Illinois Company," for equitable relief to which complainants deemed themselves entitled by reason of breach of contracts of insurance originally made by them with the Trust Company and Security Company. After demurrer had been filed to the amended bill, George Rodecker, Frank R. Conklin, Amelia M. Conklin, Dennis E. Sullivan, and Russell T. Barr claiming to be situated similarly to complainants, Watson and Olson, filed their bill of intervention, to which also a demurrer was interposed. Both demurrers were sustained by the court below, and the bills were dismissed for want of equity. Complainants and interveners both appeal.

The bill sets up the following facts: That the Security Company in March, 1902, executed and delivered to complainant Olson a 10-year term policy whereby, in consideration of the immediate payment of $30 and of $15 semiannually thereafter during the term of 10 years, it agreed to pay him at the end of the term the sum of $300, and "in addition thereto the equitable share then apportioned from the savings fund and credited to his policy," in excess of the $300 guaranteed; that many other similar contracts were then and thereafter executed

and delivered by the Security Company to other persons; that after Olson had paid two premiums, and had otherwise performed all the conditions of the contract required of him, the Security Company on or about November 1, 1902, unlawfully sold and delivered all its assets and accumulations to the Trust Company, renounced its obligations, distributed its capital among its stockholders, and disempowered itself to further perform any of its contracts; that the Trust Company in October, 1902, executed and delivered to complainant Watson a policy whereby, in consideration of the payment of $30, quarter-annually during the running of the policy, it agreed to pay him at the end of the term of 10 years the sum of $1,200, and "in addition thereto the accumulated profits then apportioned"; that after Watson had paid several premiums, amounting in the aggregate to $397.80, and had otherwise fully performed all the conditions required of him by the contract, the Trust Company in May, 1903, after it had issued many other similar policies to others, unlawfully abandoned its business, sold and transferred all its assets and accumulations to the Federal Company, renounced its obligations, and disempowered itself to perform its contracts; that the Federal Company in March, 1904, unlawfully sold and transferred all its assets including the assets originally belonging to the Security Company and Trust Company, which had been transferred to it, to the Illinois Company; that the Illinois Company admits that it has in its possession "accumulated profits" arising out of the business initiated by the Security and Trust Companies, and in which the holders of policies originally taken out in either of those companies are entitled to participate, the sum of about $181,000.00; that the Trust Company by the law of Iowa and its contract obligations with its policy holders was required to create a reserve fund sufficient to make good the face of the policy as guaranteed and a profit fund for the benefit of persistent policy holders, including the benefits derivable from lapses from the reserve fund and interest earned on the reserve fund which are alleged to constitute items of the profit fund and to deposit the same with the Auditor of the state of Iowa; that no part of the profit fund, as distinguished from the reserve necessary to pay the face of the policies, has ever been deposited with the Auditor of the state; that on November 2, 1902, the Trust Company merged its legal reserve in the hands of the Auditor of the state with the legal reserve of the Security Company, thereby rendering them indistinguishable and constituting a violation of the provisions of the statutes of Iowa in that regard.

By way of anticipating an expected plea of novation, the complainants, in effect conceding that they have performed their part of the contracts of insurance with the successive transferees of their original companies, aver in their bill that the Federal Company improperly withheld from complainants and others similarly situated information of its want of power to do business, its inability to conform to the requirements of the law, and other facts material for them to know, and that by reason of the similarity of the corporate name of the Federal Company and the Illinois Company and certain fraudulent representations made by the Illinois Company the policy holders were deceived into paying premiums as done by them. Complainants claim that they and others similarly situated to them are entitled to an accounting of

the profit fund belonging to the policy holders of the Security Company and Trust Company admitted to be held by the Illinois Company and to a determination of the exact amount thereof and of the amount due to them and others who might join with them, respectively. They claim that the profit fund should also be deposited and maintained with the Auditor of the state of Iowa. The prayers of the bill, among them being one for general relief, are sufficient to cover any relief warranted by the facts as pleaded.

The bill of intervention filed by Rodecker and others charges that the five interveners were insured by the Trust Company in amounts ranging from $3,000 to $1,500 each, by policies similar in all respects to that issued to Watson as disclosed in the bill. They adopt the allegations of the bill relating to the transfer of assets, renunciation of contracts, and commingling of reserve funds as constituting breaches of their contracts. They claim that they are entitled to recover as damages on account of such breaches all moneys paid by them as premiums, with 6 per cent. interest thereon, and also their respective shares in the profit fund properly apportionable to their policies. They admit, in effect, that they have paid the premiums due upon their respective policies to the Illinois Company since the transfer of the assets by the Federal Company to it, but adopt the averments of the bill anticipating and avoiding the plea of novation. They pray for particular and general relief. As the intervening bill adopts averments of the original bill, and adds nothing except what was necessary to connect the interveners with the subject of litigation, we may properly follow the suggestion of defendants' counsel and treat the two as one bill for the purposes of this opinion.

One of the grounds of the demurrer filed below was that the bill is multifarious, and this is urged upon us as a justification of the decree below. By multifariousness in a bill, as defined by Story, Eq. Pl. § 271, is meant:

"The improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of distinct and independent nature against several defendants in the same bill."

This court, in Kelley v. Boettcher, 29 C. C. A. 14, 85 Fed. 55, 64, observed on the subject of multifariousness that:

"There is no fatal misjoinder of causes of action in equity in any bill which presents a common point of litigation, the decision of which will affect the whole subject-matter and will settle the rights of all the parties to the suit."

See, to the same effect, New Hampshire Sav. Bank v. Richey, 58 C. C. A. 294, 121 Fed. 956; Jones v. Missouri-Edison Electric Co., 75 C. C. A. 631, 144 Fed. 765, 780; Rogers v. Penobscot Mining Co., 83 C. C. A. 380, 154 Fed. 606.

In Brown v. Guarantee Trust Co., 128 U. S. 403, 412, 9 Sup. Ct. 127, 130, 32 L. Ed. 468, the Supreme Court, speaking on the same subject, said:

"It is not indispensable that all the parties should have an interest in all the matters contained in the suit. It will be sufficient if each party has an in-

terest in some material matters in the suit, and they are connected with the others."

Counsel for defendants make an interesting argument to show that the rights of the complainants, including the interveners, are separate and distinct. They contend that Olson's claim is against all the defendants, the Security Company, the Trust Company, the Federal Company, and the Illinois Company; that Watson's claim is against the Trust Company, the Federal Company, and the Illinois Company only; and that the interveners' claims are against the Illinois Company only. Whether this is a correct statement of the rights of the complainants or the liability of the respective defendants at law is unnecessary to be determined. That depends upon whether there was a novation by the parties, and possibly upon other facts not now before us; but in any event the argument has no application here. This is a bill in equity to secure an accounting of a trust fund in which all the complainants claim to be interested. They claim that they and many others similarly situated have a right at least in the profit fund originating in their contracts with the Security Company and the Trust Company and wrongfully transferred by them to the Illinois Company, which, it is averred, holds it and admits that it is for the benefit of themselves and others similarly situated. It is this fund which affords the point of litigation common to all the complainants. How much it is on a fair accounting, and whether it is to be deposited with the Auditor of the state, or how it should otherwise be made to respond to complainants' demands, afford the chief subject-matter of the bill, and can and should be most conveniently litigated at the suit of all persons entitled to it, either by name or by proper representation. No other course would be fair or equitable to the Illinois Company, the present holder of the fund, or afford an adequate remedy to the numerous parties entitled to participate in it. The bill in our opinion is not multifarious.

It is next contended that this is not a case where the unnamed similarly situated persons can appear or become proper parties by representation. There can be no doubt that the complainants who appear by name and set forth their grounds for relief are proper parties, and whether the unnamed persons similarly situated are made so or not does not necessarily arise on the demurrer, which is alone before us for consideration. There, however, can be no doubt that in a case of this kind, where the parties interested are numerous, running, according to the averments of the bill, into thousands, they may, and properly should, be represented by a portion of their number. The general rule is that all parties interested in a trust fund are ordinarily required to be brought before the court which is administering it. But Story, Eq. Pl. (10th Ed.) § 95, recognizes an exception to this rule founded, as he says, "on the mere fact of numerousness when it may amount to a great practical inconvenience or positive obstruction of justice." He there specifies the exceptions to the rule, among which he mentions cases "where the parties are very numerous, and although they have or may have separate and distinct interests, yet it is impracticable to bring them all before the court." The Supreme Court of the United

States, in Smith v. Swormstedt, 16 How. 288, 302, et seq., 14 L. Ed. 942, recognizes the same rule and exceptions. Mr. Justice Nelson, speaking for the court, said:

"The rule is well settled that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of others. * * * Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained."

The same doctrine is approved in United States v. Old Settlers, 148 U. S. 427, 480, 13 Sup. Ct. 650, 37 L. Ed. 509; Williams v. Bankhead, 19 Wall. 563, 571, 22 L. Ed. 184.

It is further contended that there is no equity in the bill. Bearing in mind the charges made, which for the purposes of the demurrer must be taken to be true, we have a case in which the defendants Security Company and Trust Company, for a consideration fixed and performed in part by the complainants, had agreed in their policies to pay each of the complainants a certain sum of money at a fixed period, and in addition thereto to pay them a certain portion of a fund, called a "profit fund," to be made up of gains and income of one kind or another to be made during the term of their respective policies. This was an indeterminate amount, but one which the companies agreed should be determined and apportioned at the maturity of the policies. The Security Company and Trust Company, according to the averments of the bill, committed a flagrant breach of their contracts, transferred their assets to another, disempowered themselves to perform any part of their obligations, and went out of business. Complainants had paid money to the companies on the faith of their agreements, and must have some remedy, legal or equitable, for their breach. What it shall be, whether one or more of those prayed for in the bill, is not material at the present time, provided only the facts disclosed warrant some kind of equitable relief which comes within the prayer for general relief.

In the case of Lovell v. St. Louis Mutual Life Ins. Co. and St. Louis Life Insurance Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423, facts were involved in many respects like those here involved. A policy holder in the St. Louis Mutual Life Insurance Company, which afterwards sold and transferred its entire assets to the St. Louis Life Insurance Company, sued both companies in equity for relief. He prayed for the return of the money actually paid by him as premiums, with interest, and also for general relief. Mr. Justice Bradley delivered the opinion of the court, and in answer to the question propounded, whether plaintiff had any right of action against both companies, said:

"It seems to us that the mere statement of the case is enough to show the want of equity in the transaction on the part of the companies, and the right

of the complainants to some relief at the hands of the court. * * * As the old company totally abandoned the performance of its contract with the complainant by transferring all its assets and obligations to the new company, and as the contract was executory in its nature, the complainant had a right to consider it as determined by the act of the company and to demand what was justly due in that exigency."

See, to the same effect, Roehm v. Horst, 178 U. S. 1, 14, 20 Sup. Ct. 780, 44 L. Ed. 953.

An action at law by complainants against the Security and Trust Companies only would have afforded them no relief. Those companies had transferred all their assets to the reinsuring company, and such action would have been an idle and futile ceremony. Fortunately for them, their contracts gave them an interest in the fund to be gathered during the terms of their policies, and this fund, according to the averments of the bill, was transferred to the reinsuring companies, and is now recognized by them as a fund in which complainants have an interest.

In the absence of a novation—that is, the giving to the complainants and acceptance by them of the obligation of the Illinois Company in lieu of that of the Security and Trust Companies, which we will presently take up for consideration—complainants could not reach the fund in which they were concededly interested in an action at law. Unless there was a novation, there was no privity between them and the reinsuring companies, involving either an obligation on their part to pay premiums or on the part of the reinsuring company to pay losses. Lovell v. St. Louis Mutual Life Ins. Co., supra; Knapp v. Connecticut Mut. Life Ins. Co., 29 C. C. A. 171, 85 Fed. 329, 40 L. R. A. 861; Price v. St. Louis Mutual Life Ins. Co., 3 Mo. App. 262. Their rights to and interest in the profit fund will be lost to them unless equity affords a remedy.

Assuming the averments of the bill to be true, whatever other remedies complainants may have, there can be no doubt that they have an equitable right to an accounting concerning that fund. If they have not by novation accepted the obligation of the Illinois Company in lieu of that of the companies with which they originally contracted, they have according to the averments of the bill some interest in that fund, and the Illinois Company holds it in trust for them and others similarly situated, and ought to be held to an accounting concerning it, irrespective of any want of abuse of trust or other considerations. Daniell's Ch. Pl. & Pr. (5th Ed.) 1770.

If the facts are as just stated, there was no necessity for reducing complainants' claims to judgment before instituting this proceeding, as urged by defendants' learned counsel. They are not seeking relief on the theory of a creditors' bill. They deny that relationship to the Illinois Company, which holds the fund in question, and proceed exclusively on the theory that that company is in possession of a trust fund in which they are interested. In such case no preliminary reduction of claims to a judgment is required. Equitable jurisdiction is found under the general heading of "Trusts."

It is argued by defendants' counsel that the bill discloses a novation so far, at least, as the interveners are concerned; but after a careful

consideration of the allegations of the intervening bill, and those of the amended bill adopted by it, we are unable to agree with them in this particular. Language is indeed employed which by fair import leads us to believe that all the complainants and interveners formally, at least, accepted provisions made for and tendered to them in the several reinsuring contracts. But in view of the averments of the bill, anticipating and avoiding an expected plea of novation, we are unable on this demurrer to give force or effect to the import of the language in question. This is a proceeding in equity, where general relief is prayed for, and where the averments of the bill are admitted to be true. Accordingly, if an apparent novation occurred, but was brought about by fraud legally sufficient to avoid it, we cannot say that complainants, upon establishing such facts, would not be entitled to some relief. The proof upon final hearing must develop this phase of the case.

It is contended that the Auditor of the state of Iowa is an indispensable party to this suit, and that his absence renders any relief impossible. Undoubtedly he is a necessary and indispensable party to any relief complainants might be entitled to by reason of his alleged possession of the reserve funds of the Trust Company and Security Company, or by reason of the alleged improper intermingling of such funds by him. If the only relief to which complainants are entitled depends upon allegations of the kind just suggested, the Auditor should be here. His rights would be necessarily involved and materially affected. Shields v. Barrow, 17 How. 130, 139, 15 L. Ed. 158; Sioux City Terminal Co. v. Trust Co., 27 C. C. A. 73, 82 Fed. 124; McConnell v. Dennis, 82 C. C. A. 501, 153 Fed. 547; Rogers v. Penobscot Mining Co., supra.

But, if the averments of the bill entitle complainants to any relief in the absence of the Auditor, they are maintainable notwithstanding his absence. Cases supra. It is our opinion that complainants, if their rights were cut off by the reinsuring contracts, as charged, and if they were not affected by the consequences of any valid novation, as charged, are entitled to some relief, without consideration of the legal reserve or the Auditor's relation to or conduct in respect of it. They would seem to be entitled to their share in the "profit fund," which, according to the charges of complainants, has never been turned over to the Auditor, but is now held exclusively by the Illinois Company, and probably, under the doctrine of the Lovell Case, supra, to other damages occasioned by the breach of their contracts, such as restoration of premiums paid by them and interest thereon, and possibly to other relief, dependent upon the facts of the case as they may materialize on final hearing. We do not, however, wish to be understood as expressing any opinion upon the character of relief to which complainants may ultimately be entitled. For the purposes of this case it is sufficient that some relief is available to them without the intervention of the State Auditor. It results that the learned trial court erred in sustaining the demurrers and dismissing the bill.

The decree is reversed, and the cause remanded, with instructions to take such action not inconsistent with this opinion as the case may require.